148 N.J. Super. 327 (1977)
372 A.2d 659
ROBERT WUERFFEL, PLAINTIFF,
v.
WESTINGHOUSE CORPORATION, DREXEL UNIVERSITY, EDWARD STEWART AND HOWE-RICHARDSON SCALE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 15, 1977.
*329 Mr. Jay J. Newman for plaintiff (Messrs. Newman & Herman, attorneys).
Mr. Burchard V. Martin for defendant Westinghouse Corporation (Messrs. Martin, Crawshaw & Mayfield, attorneys).
Mr. F. Michael Daily, Jr. for defendants Drexel University and Edward Stewart (Messrs. Kisselman, Deighan, Montano & Summers, attorneys).
Mr. Leonard C. Horn for defendant Howe-Richardson Scale Company (Messrs. Horn, Weinstein, Kaplan & Goldberg, attorneys).
TALBOTT, J.C.C., Temporarily Assigned.
This is a personal injury action brought by plaintiff Robert Wuerffel wherein defendants move for summary judgment.
At the time of the accident in February 1971 plaintiff was enrolled at Drexel University as a full-time engineering student. As part of its educational program Drexel required all students to participate in a cooperative education program whereby they would be employed full-time for six months in *330 jobs related to their field of study. A group of coordinators administered the placement process. After contacting prospective employers in industry they interviewed students to determine their needs and priorities before recommending available jobs to them.
Pursuant to Drexel's program plaintiff was interviewed by defendant Edward Stewart, a coordinator of the program. Defendant Stewart indicated to plaintiff that a job was available to him at U.S. Pipe and Foundry Co. in Burlington, New Jersey. Plaintiff accepted the position and commenced working in December 1970. At U.S. Pipe plaintiff was assigned the job of mapping defects in pipes weighing approximately 3,000 pounds, which were being manufactured for use by Westinghouse in nuclear steam generating stations. While plaintiff was engaged in this job one of the pipes fell and struck him, eventually causing the amputation of his left leg.
On May 18, 1976 summary judgment was granted on behalf of defendant Westinghouse and on June 1, 1976, summary judgment was granted on behalf of defendant Howe-Richardson Co.
Plaintiff's suit against the remaining defendants, Stewart and Drexel, alleges that they "negligently and carelessly designed, controlled, administered and supervised the work cooperative program in that they failed to adequately inspect and supervise the area where the plaintiff would be required to work; they failed to properly and adequately design the work experience so as to provide a safe place for plaintiff to work; failed to warn the plaintiff of the dangers both known and inherent in the job assigned to the plaintiff; failed to provide proper screening and inspection of the assigned job so as to eliminate any unsafe dangerous employment; and failed to provide adequate and sufficient on-the-job inspection to insure the safety of its students."
Defendant Drexel University moves for summary judgment on the basis of charitable immunity (N.J.S.A. 2A:53A-7) while defendant Edward Stewart moves for summary *331 judgment on the basis he was not negligent as a matter of law in that he breached no duty owed to plaintiff.
The threshold question to be resolved under these facts was whether Stewart individually owed any duty to plaintiff to inspect the job site.
The undisputed facts indicate that Stewart's placement duties were determined by instructions issued to him in 1954 when he joined the Drexel placement staff. He was charged by Drexel with the duty of placing with cooperating employers approximately 300 mechanical engineering students annually. He was instructed as to the factors he was to follow in placing these students and as to the role of Drexel University in regard to these placements. He was told the placement was to be commensurate with the students' chosen discipline and their geographic convenience. He was also to go out and visit employers, and in order to expedite placement was also charged with learning the nature of the company, but he was not charged with the responsibility of investigating the plants for safety.
From the time that Stewart began working as a coordinator in 1954 until the accident in question policies of the Department of Cooperative Education did not undergo any major changes. At the time of the accident Stewart was not charged with the responsibility by Drexel of inspecting the working areas of the industries cooperating with Drexel so as to form an opinion as to whether said industries constituted a safe place for Drexel students to work. Furthermore, he did not have the authority to perform such a task. In short, Stewart's duty was to refer students to potential jobs in cooperating industries.
Although plaintiff in his brief alleges negligence on the part of Stewart for neither inspecting U.S. Pipe for safety factors nor warning or training plaintiff for the job, nowhere does he show where Stewart had such a duty.
Rather, an employee is not individually liable unless he is covered by one of the situations stated as follows in 53 Am. Jur.2d, Master & Servant, § 449:
*332 Before an employee becomes liable for an act or omission alleged to have constituted negligence, with resultant injury to a third person, it must appear that the employee has agreed to perform such act for his master and has assumed the performance of it. Nor may he be held accountable if the authority with which he was clothed did not enable him to avoid the harmful occurrence.
The facts are undisputed that Stewart neither assumed the duty of inspection nor was authorized by Drexel to do so.
Thus, this court finds that since Stewart owed no duty of inspection to plaintiff, he was not negligent as a matter of law. Summary judgment in his favor is granted.
Defendant Drexel also moves for summary judgment on the basis it is immune to liability under New Jersey's charitable immunity statute. N.J.S.A. 2A:53A-7 provides in part:
No non-profit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall except as is hereafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association where such person is a beneficiary, to whatever degree of the works such non-profit corporation, society or association * * *.
Drexel's motion for summary judgment requires a determination of the applicable conflict of laws principles. Plaintiff is a New Jersey resident and Drexel is a Pennsylvania non-profit corporation. Defendant argues that New Jersey substantive law of charitable immunity should apply, whereas plaintiff argues for the application of the substantive law of Pennsylvania which does not grant charitable immunity. There are no cases in this jurisdiction deciding this issue.
Cases decided in other jurisdictions relied upon by Drexel hold that a foreign charitable institution is entitled to charitable immunity if the applicable substantive law of the situs of the accident provides such immunity. See Jeffrey v. Whitworth College, 128 F. Supp. 219 (E.D. Wash. 1955), where Idaho law of charitable immunity was applied to a college incorporated in Washington where plaintiff was injured on *333 a college-sponsored outing in Idaho. In Hooten v. Civil Air Patrol, 161 F. Supp. 478 (E.D. Wis. 1958), Wisconsin law of charitable immunity was applied to a District of Columbia corporation where plaintiff was injured in Wisconsin. In Kaufman v. American Youth Hostels, 6 A.D.2d 223, 177 N.Y.S.2d 587 (App. Div. 1958), the court applied Oregon law of charitable immunity where a New York eleemosynary institution was sued in New York for a tort committed in Oregon.
The above cases, however, are not pertinent to or persuasive in the present situation since they reflect the prior conflict of laws principles that the situs or lex loci delicti of the tort was determinative of the substantive law to apply. New Jersey generally followed the situs rule in the 50's and early 60's, but no longer does so.
In Mellk v. Sarahson, 49 N.J. 226 (1967) New Jersey adopted the governmental interest analysis approach to supplant the situs approach for determining the applicable conflicts of law. Mellk requires a two-step analysis. The court first determines the governmental policies evidenced by the laws of each related jurisdiction and determines which state has the paramount interest in having its law apply to the rights and liabilities of the parties. Secondly, the court must review the actual contacts of the parties with each related jurisdiction. Justice Proctor held in Mellk (at 230) that in an action between New Jersey residents for injuries to an automobile guest in an accident in Ohio, "Ohio has a real interest in having its rules of the road apply to the conduct of the parties in the operation of a motor vehicle on the highways of the state." However, Ohio did not have any real interest in having its guest statute applied to defeat recovery in that case.
Drexel argues that New Jersey law should be applied as New Jersey has greater contacts, i.e., plaintiff is a New Jersey resident; the accident occurred in New Jersey; Drexel was performing educational activities in New Jersey by providing on-the-job training through a New Jersey entity, *334 and Drexel solicits, accepts and trains New Jersey students.
Plaintiff argues in opposition that Pennsylvania law should apply as Drexel is a Pennsylvania corporation; all campus activity, formal instruction and general educational activities take place solely in Pennsylvania, and the interest of Pennsylvania in holding their corporations accountable for their actions is greater than the interests of New Jersey.
Contacts to be considered when determining the applicable law with respect to an issue in tort are stated in Restatement, Conflict of Laws 2d, § 145 at 414 (1971). They include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties; and
(d) the place where the relationship, if any, between the parties is centered.
In determining the contacts under the Restatement criteria factor (a) refers to the situs, which contact is in New Jersey. Contacts relating to factor (b) weigh toward Pennsylvania as the contract between the plaintiff student and Drexel was formed in Pennsylvania and tuition was paid there. Additionally, jobs for the cooperative education program were solicited from Pennsylvania. Factor (c) is a neutral factor since plaintiff is a New Jersey resident and Drexel is a Pennsylvania corporation. As to (d), the underlying relationship between plaintiff and defendant Drexel is centered in Pennsylvania, where the plaintiff's status as student was initiated; formal instruction and campus activities were also centered in Pennsylvania.
The second prong of the Mellk requirement concerns a determination of the governmental policies evidenced by the laws of each related jurisdiction. This factor was dealt with in the recent case of Zweifel v. Morgan, 145 N.J. Super. 35 (App. Div. 1976). There the passenger wife brought an action *335 against her driver husband, among others. The issue on appeal from a lower court decision dismissing the action against defendant husband on a summary judgment motion involved the application of conflicts principles to determine if New Jersey or Pennsylvania law applied as to interspousal immunity. The Appellate Division ruled that Pennsylvania law should apply on the interspousal immunity issue partly on the basis that Pennsylvania had a paramount interest vis-a-vis its married domiciliaries.
In the instant case New Jersey's interest in granting charitable immunity to an institution must be balanced against Pennsylvania's interest in demanding accountability of its corporations.
The governmental interest in this case indubitably is the paramount interest of Pennsylvania. Pennsylvania is the place of incorporation of Drexel and certainly has more concern in its rights and obligations than does New Jersey. Pennsylvania has given claimants the right to sue such non-profit corporations and it would seem inappropriate for sister states to deny that public policy evidenced by Pennsylvania law under circumstances such as those here present. This is not a case where New Jersey is attempting to protect its residents to the end that they may recover against a foreign corporation which may have immunity in its own state. The opposite is true. Applying New Jersey law would defeat the rights of a New Jersey resident without benefitting the policy of the foreign jurisdiction.
The State of New Jersey would have no prevalent policy considerations of protecting a foreign corporation from suit when the state of incorporation does not grant that protection.
Drexel's expectations as a corporation of a state which does not grant charitable immunity must be that it must compensate those who are injured by its negligent acts and therefore is insured for this purpose.
*336 It is the holding of this court that since Pennsylvania has the most significant contacts with this case and the paramount governmental interest, the law of Pennsylvania should apply. Summary judgment for defendant Drexel is denied.