**Diana M. SCHUM, Plaintiff-Appellant,**

v.

**Charles P. BAILEY, M.D., Teruo Hirose, M.D., St. Barnabas Hospital for Chronic Diseases and Does I to XXXV, including each and every number between I and XXXV inclusive, Plaintiffs-Appellees.**

No. 77–1380.

United States Court of Appeals, Third Circuit.

Argued Jan. 3, 1978.

Decided May 26, 1978.

Lawrence Weintraub, Hackensack, N. J., for plaintiff-appellant; Donald R. Venezia, Hackensack, N. J., on brief.

Conway, Reiseman, Michals, Wahl, Bumgardner & Hurley, Gerald W. Conway, Newark, N. J., for plaintiffs-appellees; George R. Hardin, Newark, N. J., on brief.

Before ADAMS, GIBBONS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This is an appeal from an order granting the defendant's motion for summary judgment in a diversity action brought in United States District Court for the District of New Jersey. The district court concluded that plaintiff's claim was time-barred under the New York statute of limitations for medical malpractice claims. The plaintiff, Diana M. Schum, is a New Jersey resident. In her complaint she alleges that the defendant, Charles P Bailey, M. D., a resident of New York, subjected her to unnecessary surgery in St. Barnabas Hospital in the

Bronx, New York, on October 25, 1967, and to resulting treatment in New York until October 21, 1970. We conclude that the district court should have applied the New Jersey statute of limitations. Since under that statute plaintiff's complaint may not be time-barred, we reverse the judgment below.

## I

In March of 1974, Schum filed her diversity complaint in the District of New Jersey.[1] On September 23, 1974, defendant Bailey responded with a motion to dismiss the complaint for lack of personal jurisdiction, asserting by affidavit that although licensed in New Jersey as well as in New York, he had not practiced in New Jersey since 1938 and had no affiliation with any New Jersey hospital during the relevant times to which Schum's complaint referred.

While that motion was under consideration, Schum filed a second complaint in the United States District Court for the Southern District of New York. That complaint was identical to the complaint filed in the New Jersey action. On November 7, 1974, the New Jersey district court dismissed the complaint as to Bailey, holding that Dr. Bailey's contacts with New Jersey provided an insufficient basis for personal jurisdiction over him. Schum did not appeal from that judgment.

In the then pending New York action Bailey moved for summary judgment alleging that Schum's cause of action was time-barred by New York's three-year statute of limitations. The district court in New York agreed with Bailey and on June 23, 1975, dismissed Schum's complaint as barred by the statute of limitations. The district court's opinion discussed only the New York statute of limitations as it applied to Schum's action. That opinion makes no

reference to any possible conflict between New York law and New Jersey law. *Schum v. Bailey*, 398 F.Supp. 164 (S.D.N.Y. 1975). Schum appealed to the United States Court of Appeals for the Second Circuit, which affirmed without opinion the district court's order. 538 F.2d 313 (2d Cir. 1976).

Subsequent to the Southern District's disposition, Schum's attorney acquired information that Bailey, at the times in question, was in fact a staff member of, and performed professional services at, at least two New Jersey medical facilities. Accordingly, in October 1975, Schum filed a motion in the district court for the District of New Jersey seeking to set aside "the order of dismissal of the complaint as to Charles P Bailey, M.D., entered in this Court on November 7, 1974, based on new evidence under Rule 60(b)." The motion was accompanied by affidavits which contradicted the earlier Bailey affidavit upon which the district court had relied when it dismissed the complaint against Bailey in November, 1974. On June 22, 1976, Schum's motion was granted and the court restored Schum's complaint to the trial calendar.

Once again Bailey moved for summary judgment claiming that "under New Jersey choice of law principles the New York statute of limitations applies and all causes of action . . . are barred by the New York limitations." (A–19).[2] The New Jersey district court granted Bailey's motion for summary judgment on January 6, 1977. Had it accepted Schum's argument that the New Jersey statute of limitations applied, the court would have been faced with the applicability of the rule of *Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563 (1973). In *Lopez*, the New Jersey Supreme Court held that the New Jersey two-year statute of limitations does not begin to run until the injured party knows, or reasonably should know,

---

1. Schum's complaint named a number of defendants other than Dr. Bailey. As appears from the record, Schum has either abandoned her claim against these defendants or has not appealed from or moved to reopen dispositions made as to the others. Hence, Dr. Bailey is the only defendant against whom Schum is pres-

ently claiming in this proceeding, and jurisdiction obtains in this court under 28 U.S.C. § 1291.

2. It is undisputed that New York's three-year statute of limitations ran prior to the March, 1974 filing date of Schum's New Jersey action.

not only of the injury but also of the basis for the actionable claim. Schum contends that she did not learn until 1973 that her 1967 surgery had been unnecessary. Thus, if the New Jersey statute of limitations applies, there would be a material fact issue as to when the statute began to run, and summary judgment would be precluded. See *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir. 1976). This appeal followed from the district court's order of January 6, 1977.

## II

Under *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1940), a federal court sitting in diversity applies the choice of law principles of the forum state. Thus, the conflict at issue here between the New York and New Jersey statutes of limitations is properly resolved by the application of the choice of law principles of New Jersey.

Prior to 1973, the New Jersey courts generally viewed statutes of limitations as purely matters of procedure, and had followed the common law *lex fori* rule that the forum state would always apply its own statute of limitations regardless of which state's law governed the substantive issues in the case. In 1973, the New Jersey Supreme Court in *Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 305 A.2d 412 (1973), abandoned this rule. The court recognized that the rule of *lex fori* did not comport with an interest-based approach to resolving choice of law problems—an approach which had been adopted by New Jersey in a series of cases beginning with *Mellk v. Sarahson*, 49 N.J. 226, 229 A.2d 625 (1967).

In *Heavner*, a husband and wife, residents of North Carolina, sued on claims arising out of the purchase in North Carolina of an allegedly defective tire manufactured by Uniroyal, a New Jersey corporation. The accident occurred in North Carolina and the motor vehicle involved in the accident was registered there. Since Uniroyal was a New Jersey corporation it was amenable to suit in the New Jersey court.

This contact alone, however, was deemed insufficient to give New Jersey an interest in applying its more favorable products liability law to the case.

Noting the unsoundness of the *lex fori* rule, and recognizing the existence in other jurisdictions of "borrowing" statutes which provide for the application of a foreign statute of limitations under certain circumstances, the New Jersey Supreme Court in *Heavner* fashioned a judicial "borrowing" rule of its own. The court stated:

We need go no further now than to say that when the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitation period has expired at the time suit is commenced here, New Jersey will hold the suit barred. In essence, we will "borrow" the limitations law of the foreign state.

63 N.J. at 140–41, 305 A.2d at 418. This result was predicated on the conclusion that under a governmental interest analysis New Jersey would apply North Carolina's substantive law to the cause of action, 63 N.J. at 135 n.4, 305 A.2d at 414 n.4. Since the claim would be time-barred in North Carolina, the court held it would also be time-barred in New Jersey.

## III

### A

We glean from *Heavner* that the critical determination underlying the "borrowing" of a foreign statute of limitations is a determination as to whether a foreign substantive law is to be applied. The threshold question here, therefore, is whether New York's or New Jersey's substantive law governs Schum's action against Bailey. If, as in *Heavner*, New Jersey has no substantial interest in Schum's action, then New York's substantive law would govern. In such a case the district court, applying the principle of *Heavner*, might not have erred in borrowing New York's statute of limita-

tions and granting summary judgment for Bailey. If, on the other hand, it is determined that New Jersey, the forum state, does have a substantial interest such as to invoke the application of its own substantive law, then the district court, following *Heavner*, would be constrained to apply the relevant limitations law of New Jersey, and on this record could not have granted Bailey's motion for summary judgment.

## B

This court's initial consideration of *Heavner* is to be found in *Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28 (3d Cir. 1975). The plaintiffs in *Henry* were all mothers, domiciliaries of Quebec, for whom thalidomide had been prescribed during pregnancy. The complaint alleged certain defects respecting the drug. Baker, a subsidiary of the defendant Richardson-Merrell (a Delaware corporation) had manufactured an active ingredient of the drug in its New Jersey plant. The central issue presented to this court by *Henry* was whether the Quebec or the longer New Jersey statute of limitations should be applied. The district court in *Henry* had found that New Jersey was "sufficiently interested" and thus applied New Jersey law. On appeal this court reversed, holding that the plaintiffs' suit was time-barred under the applicable Quebec statute of limitations. In so holding, *Henry* characterized New Jersey's governmental-interest approach to choice of law questions as one requiring a two-step analysis. We stated in *Henry* that:

> The court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts between the parties and each related jurisdiction. A state is deemed interested only where application of its law to the facts in issue will foster that state's policy. This approach does not count up contacts and make quantitative determinations of interest based on which state has the greatest number of contacts. Instead, the qualitative nature of contacts is considered so that only con-

tacts which are likely to promote valid state policies are considered relevant.

*Id.* at 32. (footnotes omitted.)

In *Henry*, and thereafter in *Allen v. Volkswagen of America, Inc.*, 555 F.2d 361 (3d Cir. 1977) (per curiam), we identified New Jersey's policies in a tort context as consisting primarily of compensation and deterrence. We said in *Henry* that "[t]he primary purpose of a torts recovery is to compensate plaintiffs for their injury." We also noted that "[a]n alternate purpose of torts suits is to exact compensation from the tortfeasor in order to deter future misconduct." 508 F.2d at 33 (footnote omitted).

Having identified the relevant policies, and, having examined them in light of this factual context, it becomes evident that both policies would be served by the application in this case of New Jersey's own law. Moreover, assuming that the policies of New York in this self-same context are similar to those of New Jersey, it is apparent that the application of New Jersey law in no way conflicts with any New York interest.

Turning to the second step of the *Henry* formula (factual contacts), it is clear that New Jersey's strong interest in protecting compensation rights of its domiciliaries is implicated here. Schum, unlike the plaintiff in *Heavner*, is a domiciliary of New Jersey. Thus New Jersey—which had no interest in protecting any compensation rights of the plaintiff in *Heavner*—has a strong interest in compensating Schum as a domiciliary plaintiff. The New Jersey cases have almost uniformly applied New Jersey law in instances in which the state had a significant compensation interest, *viz.*, where the plaintiff was a New Jersey domiciliary. *See, e. g., Rose v. Port of New York Authority*, 61 N.J. 129, 293 A.2d 371 (1972); *Mellk v. Sarahson*, 49 N.J. 226, 229 A.2d 625 (1967); *Wuerffel v. Westinghouse Corp.*, 148 N.J.Super. 327, 372 A.2d 659 (Law Div.1977); *Raskulinecz v. Raskulinecz*, 141 N.J.Super. 148, 357 A.2d 330 (Law Div.1976). New York, on the other hand, while presumably having a strong interest

in the compensation of its own domiciliaries—a policy similar to that of New Jersey—would have no interest in compensating a non-domiciliary such as Schum. Therefore the interests of the two states in this respect are not in conflict.

With respect to the deterrence interest, the record discloses that Dr. Bailey had significant contacts with New Jersey—contacts that readily distinguish his status as a physician licensed and practicing in New Jersey from the "mere incorporation" or other minimal presence held insufficient to give New Jersey a deterrence interest in *Heavner, Henry,* and *Allen.*[3] Bailey is not a nationally dispersed corporate "presence", but is rather an individual physician who has been licensed to practice medicine in New Jersey. More importantly, Bailey was an active member of the staff of St. Michael's Medical Center in Newark from 1950–1953, served there variously as a consultant in Cardio-Surgery and an attending surgeon from 1954–1973, and was placed on "active" staff both at St. Michael's and at the Jersey City Medical Center in 1973. The continuing probability of doctor-patient relationships between a physician such as Bailey and New Jersey residents is very real. Clearly then New Jersey has an interest in deterring any tortious conduct on the part of medical practitioners such as Bailey.[4]

Since New York is both Bailey's domicile and a state where he is licensed and maintains an office for the practice of medicine, and since New York is as well the *locus* of the alleged tort, New York too would have a deterrence interest with respect to physicians such as Bailey. It does not appear that New York's substantive law of liability differs from that of New Jersey. Thus, assuming New York's interest in deterring Bailey's · tortious conduct is the same as New Jersey's, that interest is adequately served by application of New Jersey law in this case.

Since this record reveals no conflict between New York and New Jersey insofar as the application of their substantive laws is concerned, and since the record also reveals that New Jersey has a substantial interest in the application of its own law, we conclude that New Jersey, as an interested forum, would apply its own law of liability. See *Pfau v. Trent Aluminum,* 55 N.J. 511, 263 A.2d 129 (1970); *Rose v. Port of New York Authority, supra* ; B. Currie, Selected Essays on the Conflict of Laws 270–71 (1963); *See generally* Sedler, *The Governmental Interest Approach to Choice of Law,* 25 U.C.L.A.L.Rev. 181 (1977).

Having concluded that New Jersey, the forum state, has substantial interests in Schum's action such as to warrant application of its own substantive law, it is clear that, under any choice of law test[5] the

---

**3.** In *Allen,* California plaintiffs sought damages against Volkswagen of America, a New Jersey corporation, for defects in design and manufacture, and breach of sales warranty, of the car in which they were riding when injured in an accident in California. The court found that "[v]ery little business . . . was done in New Jersey." Rather, Volkswagen's regional office in California had ordered, received, and distributed the automobile in question.

**4.** The district court in its analysis completely ignored the associations which Bailey had with New Jersey hospitals. It also erred in focusing on an analysis of the respective limitations statutes of New Jersey and New York, an analysis which we rejected in *Henry,* 508 F.2d at 32 n.10.

**5.** Other than the fact that the cause of action arose in New York, the balance of the *Heavner* calculus (as that is interpreted in *Allen* ) re-

quires the application of the New Jersey statute of limitations. Indeed, it is not clear to us that the *Heavner-Allen* balancing concept is required in the present context where the forum state has a substantial interest, rather than where the forum state is completely disinterested. *See Allen,* 555 F.2d at 364 (Seitz, C. J., concurring):

> Plaintiffs' sole contention is that New Jersey has a substantial interest in the application of its statute of limitations in the present case. I agree with plaintiffs that, under *Heavner,* if it is determined that New Jersey has a substantial interest in applying its law, the New Jersey courts would, without more, apply New Jersey's own limitation period. They would not, in this situation at least, balance among all five of the *Heavner* factors.

It should not be overlooked that in *Heavner, Henry* and *Allen* New Jersey was held to have

appropriate statute of limitations to be applied is that of New Jersey.

## IV

We cannot conclude our discussion without mention of a separate ground for decision apparently urged by the defendant Bailey. In his motion for summary judgment made before the district court, Bailey adverted to the principles of collateral estoppel and res judicata in just three sentences:

> Once "borrowed," it is clear that the New York Statute of Limitations bars the plaintiff's cause of action herein. This issue has been raised and decided by the United States District Court for the Southern District of New York applying the principles of New York Law. It would seem that the principles of collateral estoppel and *res judicata* proscribe the plaintiff from relitigating these issues in another form.

Appendix at 24.

Before us Bailey did not argue res judicata or any related doctrine as a ground of appeal. However, on the last page of his brief, the following appears:

> This issue [whether the suit was time-barred by the New York statute of limitations] was raised and decided by the United States District Court for the Southern District of New York applying the principles of New York law, and its determination has been affirmed by the Court of Appeals for the Second Circuit. Moreover, the principle of *res judicata* prevents the plaintiff from relitigating this issue in another forum.

Appellee's Brief at 18.

Those few sentences comprise the whole of the discussion of res judicata and the

effect, if any, of the New York determination on the present litigation. Our examination of the opinion rendered by the court in the Southern District of New York, which held that the New York statute of limitations barred Schum's complaint, reveals no discussion whatsoever as to any. conflict of laws issue. In particular no question was raised as to whether New York law or New Jersey law was to apply. Recognizing that, at the time of the New York action and the New York decision, Schum had no knowledge of Bailey's New Jersey relationships—a knowledge which she subsequently obtained through investigation and which revealed Bailey's New Jersey hospital associations—she obviously could not and did not urge the conflict issue in the New York forum.

Other than the two sentences which appear in Bailey's brief, neither party here has briefed this issue. Moreover, of greater significance, the district court did not address itself in any respect to that concern. Accordingly it would be inappropriate for us to decide the res judicata issue on this record. *See New Jersey Education Association v. Burke*, 579 F.2d 764 at 776 (3d Cir. May 1, 1978). If on remand such an issue is raised by the defendant Bailey, it will be for the district court to resolve it in the first instance.

## V

The order of the district court granting summary judgment in favor of the defendant Bailey will be reversed. The case will be remanded for further proceedings consistent with this opinion.[6]

had no substantial interest. As such, in each instance, foreign law rather than New Jersey law was applied.

**6.** In light of Judge Gibbons' concurrence in this case, it may be useful to note the points upon which the majority and the concurrence diverge.

First, it seems that until the Supreme Court chooses to reconsider the rule in *Klaxon*, we

are bound by the principles of *Klaxon* and therefore we should not hesitate (as the concurrence suggests) in applying the settled law of that case. Moreover, we do not fully share the concurrence's "misgivings" regarding the *Klaxon* rule. *Cf.* Concurring Op. at 502–503.

Second, under our view, this Court's decision in *Allen v. Volkswagen of America, Inc.*, 555 F.2d 361 (3d Cir. 1977), *reaffirming Henry v.*

GIBBONS, Circuit Judge, concurring in the judgment.

At the post-argument conference on this case on January 3, 1978, the presiding judge assigned the opinion to me pursuant to Internal Operating Procedure E–2. On February 22, 1978, I circulated to the panel the opinion which is annexed hereto as an appendix. On March 10, the presiding judge reassigned the opinion to Judge Garth. The majority opinion results in the same judgment as that proposed in the draft which I circulated on February 22, 1978—a reversal and a remand to the district court. I concur in that judgment for the reasons set forth in the appendix to this opinion. I do not join in the majority opinion because in my view it does not deal adequately with the issues which are before us and which will be before the district court as a result of the remand.

## APPENDIX

This is an appeal from the dismissal of a diversity action by the United States District Court for the District of New Jersey. The district court concluded that plaintiff's claim was time-barred under the New York statute of limitations for medical malpractice claims. The plaintiff, Diana M. Schum, is a New Jersey resident. In her complaint she alleges that the defendant, Charles P. Bailey, M.D., subjected her to unnecessary surgery in St. Barnabas Hospital in Bronx, New York, on October 25, 1967, and to resulting treatment in New York until October 21, 1970.[1] We conclude that the district court should have applied the New Jersey statute of limitations. Since under that statute plaintiff's complaint was not properly dismissed, we re-

verse the judgment below. We remand the case for further consideration of the affirmative defense of res judicata.

## I. PROCEDURAL HISTORY

In March of 1974, Schum filed her diversity complaint in the District of New Jersey. On September 23, 1974, defendant Bailey responded with a motion to dismiss the complaint as to him for lack of personal jurisdiction.[2] Relying on *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), Bailey urged that he did not have sufficient contacts with New Jersey for that state, or for a federal district court sitting in that state to compel his appearance. In support of his motion, Bailey filed an affidavit suggesting that, although he was licensed in New Jersey, he did not practice medicine there. While that motion was under consideration, Schum filed a second complaint in the United States District Court for the Southern District of New York. That complaint named as defendants the same individuals sued in the New Jersey action and made the identical allegations. Schum filed no affidavits in opposition to the motion to dismiss the New Jersey action as to Bailey, and on November 21, 1974, that motion was granted. She took no appeal from that judgment.

In the New York suit Bailey moved for summary judgment on the ground that the cause of action alleged was time-barred by New York's three-year statute of limitations. The district court agreed with Bailey and on July 23, 1975, it dismissed that action. Judge Owens's opinion held: (1) that either § 214(6) or § 215(3) of the New York

---

*Richardson-Merrell*, 508 F.2d 28, 32 (3d Cir. 1973) (which interpreted *Heavner*), frames the statute of limitations issue so far as New Jersey is concerned. Therefore it appears to us that discussion of *Allen* and *Henry* is relevant to the resolution of this case.

    Third, the res judicata defense was neither squarely raised before nor passed upon by the district judge; it also was not meaningfully briefed before us. Since a claim of res judicata is best resolved initially by a trial court, we

believe that we need not explore the procedural questions dealt with by the concurrence. Concurring Op. at 504–506.

1. Plaintiff's complaint set forth five causes of action—negligence and medical malpractice; negligence due to failure to obtain informed consent prior to medical operation; trespass; assault and battery; and fraud.

2. *See* Fed.R.Civ.P. 12(b)(2).

Civil Practice Law and Rules[3] applied; (2) that under either section the governing time bar was three years; and (3) that Schum did not fall within any of the exceptions which, under New York law, would toll the application of that statute of limitations. Schum appealed to the United States Court of Appeals for the Second Circuit, which affirmed Judge Owens's decision.[4] Schum has not attempted to reopen the final judgment in the New York action.

On October 27, 1975, Schum filed in the District of New Jersey a motion under Rule 60(b) of the Federal Rules of Civil Procedure for relief from the judgment dismissing her complaint against Bailey. In support of that motion, she filed an affidavit by her attorney which suggested that Bailey had professional staff relationships with hospitals in Newark and Jersey City and that Bailey sometimes performed surgery in one of them. This affidavit contradicted the earlier affidavit submitted by Bailey, upon which the district court had relied in dismissing the complaint against Bailey. Accordingly, on June 22, 1976, the court granted the motion for relief from judgment.

It should be noted that the incidents of New Jersey practice relied upon by the district court in reopening its earlier judgment did not relate in any way to the treatment of Schum. But Bailey does not urge that the contacts with New Jersey upon which the court relied in granting the Rule 60(b) motion were insufficient to meet the low due process threshold of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Thus, for present purposes we will assume that the granting of Rule 60(b) relief was proper.

With the case restored to the calendar in the District of New Jersey, Bailey moved for summary judgment on the ground that under the circumstances of this case New Jersey would apply the New York statute of limitations, under which the action was time-barred.[5] The district court accepted that argument and granted Bailey's motion for summary judgment. Had it accepted Schum's argument that the New Jersey statute of limitations applied, the court would have been faced with the applicability of the rule of *Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563 (1973). In *Lopez*, the New Jersey Supreme Court held that the New Jersey two-year statute of limitations does not begin to run until the injured party knows, or reasonably should know, not only of the injury but also of the basis for the actionable claim. Schum contends that she did not learn until 1973 that her 1967 surgery had been unnecessary. Thus, if the New Jersey statute of limitations is to be applied, there probably would be a question as to when the statute began to run, and summary judgment would not be proper. *See Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir. 1976).

In reaching its decision, the district court recognized that because Schum was domiciled in New Jersey, that state was an interested forum. The court noted, however, that Bailey was a New York resident who was licensed in New York and who was practicing medicine there, that Schum had consulted Bailey only in New York, and that the surgery and treatment had all taken place there. The court recognized that a true conflict existed between the interests of the forum and the interests of the state in which the disputed medical services were rendered. It then reviewed the New Jersey authorities in order to predict whether, if the suit had been brought in New Jersey state court, that court would apply the New Jersey or the New York statute of limitations. The district court concluded that New Jersey, whose interest was limited to the compensation of its domiciliary, would, after weighing New York's competing interests, apply the New York statute.

---

**3.** N.Y.Civ.Prac.Law §§ 214(6) & 215(3) (McKinney).

**4.** Neither Judge Owens's opinion nor the judgment of the Second Circuit affirming that decision is published.

**5.** It is undisputed that New York's three-year statute of limitations ran prior to the March, 1974 filing date of Schum's New Jersey action.

## II.  ANALYSIS

### A.  Statute of Limitations

We agree with the district court that New Jersey was not a neutral forum and that there was a true conflict between New Jersey's interests and those of New York. However, we think that a more detailed identification of those interests is required, particularly in a case growing out of the rendition of sophisticated medical services in a market which, although artificially divided by state boundaries, extends throughout the tri-state metropolitan area. Before turning to a prediction of how the New Jersey courts would resolve this conflict, we will attempt to identify those interests.

The law of any sovereignty with respect to indemnification for personal injuries may involve one or more of three broad categories of public policies.  The two policies most commonly identified in conflict of laws discussions are *compensation* and *deterrence.*  Less commonly identified, but sometimes referred to in cases discussing the applicability of automobile guest statutes, is an interest which, for want of a better term, may be called the *cost* policy.[6] The compensation policy is most intimately associated with the sovereignty of the injured person's domicile.  That policy reflects the sovereignty's desire that the injured party not become a charge on its society and that he be restored, if possible, to productivity.  The deterrence policy as a justification for allowing tort suits is based on the behavioral assumption that exacting compensation from the wrongdoer or from his insurance carrier will deter his future misconduct.  That policy is generally associated with the sovereignty in which past misconduct took place and in which future misconduct may occur.  Although more than one sovereignty may have an interest

in the application of the compensation or deterrence policies, it is generally assumed that a truly neutral forum does not.[7]  Finally, states are interested in the cost burden that large payments for personal injury reparations may impose upon the furnishing of goods and services thought to be socially desirable.  The relationship between the level of medical malpractice insurance premiums and the cost and availability of medical services in a given state is a striking illustration of the need to consider the cost policy.  As with the other two policies, it would appear that, especially in a multistate metropolitan area comprising a single market for medical services, more than one sovereignty might have an interest in the cost policy.  However, a truly neutral forum would appear to have no such interest.

Thus, it seems that a truly neutral forum would have no interest in any of the three policies which have been identified.  On the other hand, a forum could well be situated such that it is interested in the application of one but not all of these policies to the particular dispute.  At the same time another sovereignty could be affected in one or more of the other respects.  Where the application of one state's law would promote that state's interests but frustrate the interests of the other state, a true conflict exists.

That is exactly what happened here.  As we indicated earlier, Schum is a New Jersey resident.  She initially consulted a New Jersey physician, who referred her to Dr. Bailey in New York.  All of Dr. Bailey's services to her, including the disputed surgery, were performed in New York, where he maintains his major practice.  However, on occasion he does practice in New Jersey.  Under these circumstances New Jersey has a clear policy interest in compensating its domiciliary.  Because Dr. Bailey sometimes

---

6.  *See, e. g., Mellk v. Sarahson,* 49 N.J. 226, 229 A.2d 625 (1967).

7.  *See Henry v. Richardson-Merrell, Inc.,* 508 F.2d 28, 33 (3d Cir. 1975), where we stated:
    The primary purpose of a torts recovery is to compensate plaintiffs for their injury.  Since the Heavners were domiciliaries of North

Carolina, New Jersey had no interest in protecting their compensation rights.
    \*  \*  \*  \*  \*  \*
    Where the tortious activity took place wholly outside of New Jersey as in *Heavner* [*Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 305 A.2d 412 (1973)], however, [the deterrent] policy could not be fostered.

practiced medicine in New Jersey, arguably New Jersey's deterrence interest is implicated too. When compared to that of New York, New Jersey's interest in the cost of reparations which might result from this suit is so attenuated that New Jersey probably should be regarded, with respect to the cost policy, as neutral. On the other hand, while New York has no compensation interest here, its deterrence and cost policies are clearly involved. New York is vitally interested in the cost of medical services to its own residents and thus in the impact of medical malpractice claims on the cost of those services. Moreover, New York City is a national, as well as a regional, center for medical research and sophisticated health care. It attracts patients for such care from the entire region and from even more distant places. Because its health care industries provide many jobs for New York residents, New York is interested in the cost of such care even for nonresident patients. The policy of repose reflected in New York's statute of limitations affects that cost and the degree of deterrence. New York has chosen not to adopt the discovery rule with the same liberality as did New Jersey in *Lopez v. Swyer*, 63 N.J. 267, 300 A.2d 563 (1973).

In order to resolve such a conflict between two states' laws, a federal court exercising its diversity jurisdiction must apply the conflict of laws rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). *See Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). In any rational system of federalism we should not be required to speculate as to how the Supreme Court of New Jersey would resolve the multiple variables discussed above. The first perceived need which led to the calling of the 1787 convention was the need for an interstate umpire. When the policies of two states are in actual conflict, which state's policy should prevail should be a matter of such umpiring and thus a question of federal law. The full faith and credit clause implies as much. But while the Supreme Court has taken the

sensible course of federalizing conflicts over power to adjudicate, *see, e. g., Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *International Shoe Co. v. Washington, supra*, it has refused to resort to federal law to resolve other interstate policy conflicts, *see Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975). Under the *Klaxon* regime such policy conflicts are resolved by a race to judgment. The court which first applies its choice of policies prevails and the devil take the hindmost. The consequences in this case of our being bound by state choice of law rules is a classic illustration of what is wrong with the *Klaxon* rule. Despite our misgivings about that rule, as an intermediate federal court we are bound by it and thus we must determine how the New Jersey courts would have resolved the conflict.

After surveying five New Jersey cases and one Third Circuit case which the parties suggested as relevant, the district court concluded that, while New Jersey had not yet ruled on a true conflict in a statute of limitations context, its Supreme Court would probably defer in this case to the interests of New York. Looking at the same authorities, we agree that the Supreme Court of New Jersey has not spoken definitively. But we make the opposition prediction.

Our starting point is *Mellk v. Sarahson*, 49 N.J. 226, 229 A.2d 625 (1967), where the New Jersey Supreme Court abandoned the traditional locus delicti rule. In *Mellk* New Jersey was clearly interested in the outcome because of the compensation interest of the plaintiff, a New Jersey domiciliary. In refusing to apply the guest statute of the place where the accident occurred, the court spoke of governmental interest analysis. In cases since *Mellk* in which the plaintiff was a New Jersey domiciliary, the New Jersey courts have similarly applied governmental interest analysis. In virtually every case the court applied the New Jersey rule which favored recovery by that domiciliary. *See, e. g. Rose v. Port of New York Auth.*, 61 N.J. 129, 293 A.2d 371 (1972); *Wuerffel v. Westinghouse Corp.*, 148 N.J.Super. 327,

372 A.2d 659 (L.Div.1977); *Raskulinecz v. Raskulinecz,* 141 N.J.Super. 148, 357 A.2d 330 (L.Div.1976). The only exception to that rule is *Franco v. Davis,* 51 N.J. 237, 239 A.2d 1 (1968). However, in that case there was a conflict between the policy of compensating a New Jersey domiciliary for an out-of-state accident and New Jersey's domestic policy prohibiting suits by children against a parent. Only in *Pfau v. Trent Aluminum,* 55 N.J. 511, 263 A.2d 129 (1970), was New Jersey a truly neutral forum. In *Pfau* the New Jersey Supreme Court did balance the competing governmental interests of the state of the plaintiff's domicile (Connecticut) and the state where the accident occurred (Iowa). But neither the parties in this action nor the district court has called to our attention any New Jersey case which, despite the compensation interest of a New Jersey domiciliary, chose to apply a rule of decision less favorable to that interest than the law of the forum.

In the famous case of *Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 305 A.2d 412 (1973), the New Jersey Supreme Court abandoned the rule that the forum always applies its own statute of limitations. In *Heavner* a husband and a wife, who were residents of North Carolina, sued on claims arising out of the purchase of an allegedly defective tire in North Carolina. The accident occurred in North Carolina and the motor vehicle involved in that accident was registered there. Since Uniroyal was a New Jersey corporation, it was amenable to suit here. The plaintiffs had no connection with New Jersey other than their desire to obtain the benefit of this state's more favorable statute of limitations. Since the plaintiffs were not domiciled in New Jersey, New Jersey had no compensation interest in the alleged victims. New Jersey arguably could have asserted a deterrence interest since, although the product which allegedly caused the injury had not apparently been manufactured in that state, Uniroyal was a New Jersey corporation with a large portion of its productive capacity located there. The New Jersey Supreme Court did not assert that interest, however, and held that the North Carolina statute of limitations should apply.

In *Henry v. Richardson-Merrell,* 508 F.2d 28 (3d Cir. 1975), we reviewed the New Jersey conflict of laws cases. We observed:

In a series of cases beginning with *Mellk v. Sarahson,* 49 N.J. 226, 228 A.2d 625 (1967) and *Pfau v. Trent Aluminum Company,* 55 N.J. 511, 263 A.2d 129 (1970), New Jersey courts adopted the governmental interest approach to choice of law questions. This approach requires a two-step analysis. The court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts between the parties and each related jurisdiction. A state is deemed interested only where application of its law to the facts in issue will foster that state's policy. This approach does not count up contacts and make quantitative determinations of interest based on which state has the greatest number of contacts. Instead, the qualitative nature of contacts is considered so that only contacts which are likely to promote valid state policies are considered relevant. *Mullane v. Stavola,* 101 N.J.Super. 184, 243 A.2d 842, 845 (1968).

508 F.2d at 31–32 (footnote omitted). In *Henry* we concluded that New Jersey was a disinterested forum and that as such it would borrow the foreign state's statute of limitations.

As we noted above, in *Heavner* New Jersey was seemingly disinterested in deterring Uniroyal with respect to events taking place wholly outside New Jersey, despite Uniroyal's strong corporate presence in New Jersey. That disinterest suggests that in the instant case New Jersey would place no weight, for choice of law purposes, on Dr. Bailey's local licensure or on his New Jersey activities which were unrelated to the New York surgery performed on Schum. But, unlike the plaintiffs in *Heavner,* the plaintiff here is a New Jersey domiciliary. Where the New Jersey forum has an interest in compensating its domiciliary, it has strongly tended to resolve any conflict of laws in favor of the application of its own law.

We do not mean to suggest that New Jersey manipulates choice of law on an ad hoc basis. Rather, we point out that two different choice of law theories are extant. It is far from clear which theory the New Jersey courts have embraced. Under one theory, for which the late Professor Brainerd Currie was the leading spokesman, if a forum is substantially interested it will always apply its own law.[8] The second theory is expressed in § 145 of the Second Restatement of Conflict of Laws. Under that theory even an interested forum will balance the competing interests of the several states having an affected interest. Noting that the New Jersey courts had occasionally cited § 145 with approval, the district court concluded that New Jersey was fully committed to balancing even when it was an interested forum. But the New Jersey courts have also cited Professor Currie approvingly. *See, e. g., Pfau v. Trent Aluminum,* 55 N.J. 511, 515–16, 526, 263 A.2d 129 (1970). More significant, except in *Franco v. Davis,* 51 N.J. 237, 239 A.2d 1 (1968), since *Mellk* New Jersey has never engaged in interest balancing in any case which produced an application of a foreign rule adverse to the interest of a New Jersey domiciliary-claimant. In *Franco v. Davis,* though, it was a competing New Jersey policy which prevailed. The New Jersey Supreme Court has been in the forefront of those states which have enlarged the circumstances in which residents can recover for personal injuries. *See, e. g., Henningsen v. Bloomfield Motors,* 32 N.J. 358, 161 A.2d 69 (1960). In the present case we do not believe that New Jersey would balance its compensation interest against New York's cost and deterrence interests affected by medical malpractice suits. Rather, we predict that New Jersey would disregard New York's interests and instead apply its own more favorable statute of limitations. Our prediction may not be any more informed than that of the district judge who concluded that New Jersey would apply § 145 of the Restatement. But there are three of us and we speak last.

### B. *Effect of New York Judgment*

Having concluded that New Jersey would apply its own discovery rule, we cannot affirm the grant of summary judgment for the reasons relied upon by the district court below. However, that only begins the inquiry as to a proper disposition of this case, for Bailey asserts as a separate ground for affirmance the res judicata bar of the judgment he obtained in the Southern District of New York. Since under the regime of *Klaxon* and *Day & Zimmerman, Inc. v. Challoner, supra,* true conflicts are resolved not by federal mediation but by a race to judgment, the New York judgment obviously presents a formidable obstacle for Schum. The federal district court in New York adjudicated the statute of limitations question and concluded that the New York statute of limitations would apply. That judgment is a bar to the present New Jersey action unless in this action that New York judgment can be set aside.

The grounds for relief from federal judgment are specified in Rule 60(b) of the Federal Rules of Civil Procedure. Prior to the adoption of Rule 60(b), some of the grounds for relief from a judgment listed in that rule could have been the basis for an independent action to enjoin the enforcement of a judgment. In bringing such an independent action against a prior judgment, it is not necessary, in order to obtain relief, to return to the court which rendered the first judgment. 7 J. Moore, Federal Practice § 60.36, p. 603 (2d ed. 1975). Current Rule 60(b) explicitly preserves that option.[9] Therefore, we must inquire whether Schum's moving papers have suggested anything which might warrant relief from the New York judgment.

Certain grounds for relief under Rule 60(b) are clearly unavailable to Schum. For

---

**8.** *See* B. Currie, Selected Essays on the Conflict of Laws (1963).

**9.** Rule 60(b) reads in part as follows:

> This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding . . . ..

example, the New York judgment is neither void under subsection (4) nor satisfied under subsection (5). Moreover, Schum points to no newly discovered evidence which, under subsection (2), would have led in New York to the granting of a new trial. The only evidence which might conceivably qualify is the evidence revealing Bailey's New Jersey affiliations. However, since New York, like New Jersey, is an interested forum, these New Jersey contacts would not have prompted New York to adopt New Jersey's *Lopez v. Swyer* discovery rule. On the contrary, we believe that New York still would have applied its own statute of limitations. Thus, the evidence would not have affected the outcome of that action. For the same reasons, Schum does not qualify for relief under Rule 60(b)(1), which provides for relief on grounds of mistake, inadvertence, surprise, or excusable neglect.

Schum contends that she is entitled to relief from the New York judgment either because that judgment was obtained by fraud, misrepresentation, or other misconduct of the adverse party, *see* Fed.R.Civ.P. 60(b)(3), or because the circumstances of her case qualify as "any other reason justifying relief from the operation of the judgment", Fed.R.Civ.P. 60(b)(6). To support these claims, she points to the misleading affidavit filed on Bailey's behalf with regard to his original motion to dismiss for lack of personal jurisdiction. She contends that this affidavit induced her to abandon her suit in the *Lopez v. Swyer* forum and to resort instead to a forum which, under the *Klaxon-Challoner* rule, was free to apply its own unfavorable law.

A preliminary difficulty with Schum's attack on the New York judgment is her failure to avail herself of an appellate remedy in her first New Jersey lawsuit. She argues, however, that she was euchred out of that remedy by the same misrepresentation which led her to file suit in a legally unfavorable forum. We agree. If she was misled into resorting to a disadvantageous forum, she was also misled into acquiescing in the dismissal of the New Jersey suit for lack of in personam jurisdiction. We attach no significance to her failure to appeal the dismissal of that New Jersey case. For all practical purposes, her failure to appeal and the issue of relief from the New York judgment merge into the identical legal question.

That legal question is whether the filing of a false or misleadingly incomplete affidavit in support of a Rule 12(b)(2) motion, which according to the pleadings before us resulted in Schum's resort to a forum with an unfavorable choice of law rule, is a ground for relief from a federal judgment.

In resolving that question, we are presented with a potentially complex choice of law problem. Our initial difficulty is to determine which law—federal or state— governs the issue of whether relief from the judgment should be granted. As Professor Moore points out, there are three possible views. First, a court might read *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to require the application of state law on the ground that an independent equitable action for relief from a judgment originates in state law. Second, state law might govern in a diversity jurisdiction case, while federal law would govern in a federal question case. Finally, a court could always apply federal law to decide the issue of relief from a federal judgment. Professor Moore argues that the third view is the correct one. Pointing out that federal courts have long asserted the power to enjoin in appropriate situations the relitigation of matters adjudged by a federal judgment, he urges that the governing law for relief from such a judgment should be uniform and federal. 7 J. Moore, Federal Practice ¶ 60.37[2], p. 635 (2d ed. 1975).

We agree with Professor Moore that the granting of relief from a federal judgment, whether that judgment was obtained in a federal question or a diversity case, should be a matter of federal law. Applying federal law promotes uniformity and prevents forum-shopping. If the result were otherwise, we would witness the ludicrous spectacle of litigants scurrying around in search of the state that provides the best avenue of attack on the federal judgment. More-

over, since in this case the alleged fraud was perpetrated upon the federal court system, that system has a substantial interest in applying its own law to rectify the wrong done to it. Therefore, we conclude that the law that governs the appropriateness of relief from the judgment must be federal.[10]

The factual pattern presented by this case is sufficiently unique to make classification into an established category for relief difficult. The closest analog is an action for relief based on fraud. Treating Schum's claim as one for relief from a judgment on that ground, we must, in passing, address the extrinsic-intrinsic fraud distinction of *United States v. Throckmorton,* 98 U.S. 61, 25 L.Ed. 93 (1878). Under the *Throckmorton* rule intrinsic fraud, such as the use of perjured testimony, false pleadings, or forged documentary evidence, will not provide a basis for an original action for relief from a judgment. Subsequent cases have cast some doubt upon the viability of the distinction drawn in *Throckmorton.* See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *Marshall v. Holmes,* 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870 (1891). In *Publicker v. Shallcross,* 106 F.2d 949, 950 (3d Cir. 1939), this court predicted that, if faced with the question again, the Supreme Court would abandon the distinction.[11] The Supreme Court has not spoken since *Publicker,* and we are still bound by the prediction we made there. In this circuit the intrinsic or extrinsic nature of the fraud is irrelevant. Therefore, we need not consider whether a false pleading filed in a separate action would, for purposes of the *Throckmorton* rule, be treated as intrinsic fraud.

The question, then, is whether as a matter of federal law a charge that a party was induced by a fraudulent misrepresentation of fact to resort to a forum with a less favorable choice of law rule states a cause of action for relief from the judgment rendered in that forum. As with all attacks upon final judgments, there is tension between the public interest in favor of finality and the equitable principle that a defrauder should not enjoy any advantage obtained as a result of his own wrongdoing. We think that under the circumstances presented here that tension must be resolved in favor of Schum and against strict adherence to finality. Thus, we conclude that the district court has the power to entertain Schum's claim for relief from the New York judgment. We point out, however, that the pleadings in this case are so unique that our holding is not intended to be a precedent for any large inroads upon the finality principle.

To some extent the issue of relief from a judgment was litigated by these parties in connection with Schum's application to reopen the earlier judgment rendered in the District of New Jersey. These issues are not necessarily identical, however, since relief from the New Jersey judgment was available on the grounds listed in Rule 60(b)(1) and (2) rather than on the ground of fraud. Thus, the district court has not passed upon the question whether Schum was in fact fraudulently induced to resort to an unfavorable forum. Bailey's affidavit in opposition to the motion to reopen the New Jersey judgment puts in issue many of the elements of a fraud claim, including his intention to mislead. Since material issues of fact are in dispute, the question of relief from the New York judgment cannot be resolved without a hearing in the district court.

---

10. We derive some support for our conclusion from the Supreme Court's decision in *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). There the Court held that the res judicata effect to be given to a federal judgment in a state court is a matter of federal law. Although *Stoll* involved a federal statute, we believe that its reasoning would be extended to judgments reached by federal courts in diversity cases. In addition, the decision in *Donovan*

*v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964), casts doubts upon the power of a state court to give any relief from a federal judgment.

11. *But see Serzysko v. Chase Manhattan Bank,* 461 F.2d 699 (2d Cir. 1972) (suggesting that the extrinsic-intrinsic fraud distinction still applies).

The judgment appealed from will be vacated and the case remanded for further proceedings consistent with this opinion.