## PUBLICKER v. SHALLCROSS et al.
### No. 7028.

Circuit Court of Appeals, Third Circuit.
Oct. 6, 1939.

Harry Shapiro, of Philadelphia, Pa., for appellant.

Morris Wolf and Edward A. G. Porter, both of Philadelphia, Pa. (Wolf, Block, Schorr & Solis-Cohen and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa., of counsel), for appellees.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The first time this case came before us, counsel for appellant-respondent demurred to and so technically admitted the truth of the facts alleged by petitioner-appellees. We understood that he did so purely for the purpose of testing the law. We felt that the cause might be more justly decided if all the facts were known, and remanded it to the District Court with direction to file an answer and proceed to hearing on the merits, Publicker v. Shallcross, 3 Cir., 103 F.2d 596, 597. Appellant's new counsel evidently did not share our feeling. His answer again in substance admits the crucial averments of the petition (by the device of styling them as immaterial and not requiring an answer). See Rules of Civil Procedure for the District Courts of the United States, Rule 8 (d), 28 U.S.C.A. following section 723c. No further facts are added. Thanks to this cooperative gesture on the part of counsel, we are now back where we started—testing a pure question of law.

Appellant's position seems to be that, in his circumstance, wickedness, as well as virtue, is its own reward. He, as the petition states, fraudulently induced the appellees (the receiver for the defunct Philadelphia Company for Guaranteeing Mortgages), two skeptical bondholders, a special master, and the learned district court itself, to believe that his total assets were $8,500. On that basis he compromised an $850,000 claim of the receivers against him for one cent on the dollar. In truth, however, he had assets worth $230,000. Nevertheless, he is convinced that the order authorizing the compromise cannot be vacated after a lapse of two years, simply because he perjuriously concealed his true financial condition at a hearing before the master to whom the matter of authorizing the compromise was referred.

All concerned exhibit, we think, some confusion as to the exact ground for this, to those not initiated in the mysteries of the law, somewhat startling proposition. They talk in the same breath of the rule in United States v. Throckmorton, 98 U. S. 61, 25 L.Ed. 93, and in Delaware, L. & W. R. Co. v. Rellstab, 276 U.S. 1, 48 S. Ct. 203, 72 L.Ed. 439, whereas the ratio decidendi of the two lines of decisions is entirely distinct, the only similarity lying in the coincidence of perjury. The class of cases represented by the latter adjudica-

tion depend upon the technical lack of legal power of courts after the expiration of their own technical time divisions; In re Metropolitan Trust Co., 218 U.S. 312, 31 S.Ct. 18, 54 L.Ed. 1051; Sibbald v. United States, 12 Pet. 488, 9 L.Ed. 1167; Bronson v. Schulten, 104 U.S. 410, 415, 26 L.Ed. 797; Phillips v. Negley, 117 U.S. 665, 674, 6 S.Ct. 901, 29 L.Ed. 1013; 34 C.J. 210–219. The rule in United States v. Throckmorton, above cited, on the other hand, acknowledges the power to act beyond the term (under its facts, 60 terms had gone by) but gives other reasons with which we happen to disagree—but still reasons why such power should not be exercised. Here, as in United States v. Throckmorton, above cited, there is no suggestion of a legal remedy. On the contrary, the relief is, and had to be, asked for by petition on the equity side of the court. The appellant-respondent himself seems to realize this because his brief indicates his principal reliance on United States v. Throckmorton, above cited.

We do not consider ourselves bound by that case for two, as we think, excellent reasons. We do not believe it applies to our circumstance and we do not believe it is the law of the Supreme Court today. That august body gave full validity to two ancient Latin maxims, interest rei publicæ ut sit finis litium and nemo debet bis vexari pro una et eadam causa. Their doing so has been discussed and criticized in 22 Harvard Law Review 600 (note) and in 49 Harvard Law Review 327 (note). In the first, the learned commentator says:

"The reason that equity relieves against judgments secured through accident or fraud is to prevent the retention of an advantage unfairly or unconscionably gained. Assuming that the injured party was not guilty of laches, the same reason applies to intrinsic as well as extrinsic fraud, and hence to perjury. Two main objections urged against equitable interference because of perjury are, first, that, as the case was none the less tried on its merits despite the perjury, to permit a reexamination would result in flooding the courts with litigation; second, if judgments may be impeached on the ground of perjury, each defeated party may in turn charge the other with perjury in the last suit, so that litigation would never terminate. To sustain the first objection we are driven to say that one against whom a judgment has been gained by fraud in some collateral matter, such as a false promise or compro-

mise, has not had his day in court; but that one who without fault on his part was ignorant of, or unable to establish a fraud which later clearly appeared, has had a fair trial on the merits. Yet in both cases it is inequitable for the victor to retain his advantage. The second objection is more serious. It is to be noted, however, that before relief is granted on the ground of perjury it is required that the plaintiff have a meritorious defense and that he clearly establish the perjury. Consequences are not always conclusive against a rule of positive law; and here the equity of the case is clear.

"It is said that the refusal to enjoin the enforcement of judgments on the ground of perjury is a necessary choice between the evils of injustice in individual cases and the encouragement of vexatious litigation. But a party seeking redress is required to exhaust first his legal remedies, to be free from fault, and clearly to establish the perjury without which judgment would not have gone against him. It is submitted that with these safeguards against undue litigation the lesser evil is to follow the equity of the matter."

22 Harvard Law Review 600, 601, 602 (note).

A later confrere on the coast points out that its justification as a bar to endless litigation is weakened by the experience in Wisconsin, which has rejected the rule; since 1915 only four cases attacking judgments on the ground of perjury having reached the supreme court, Boring v. Ott, 1909, 138 Wis. 260, 119 N.W. 865, 19 L. R.A.,N.S., 1080; see Note (1935) 23 California Law Review 79. However that may be, the high court felt that the nature of our litigious process minimizes the chances of successful perjury to such an extent that it is outweighed by the evils of unending litigation. The authors of Ruling Case Law put it this way: "* * * There is an obligation on litigants to prepare for trial and to be ready to meet and expose perjury then and there. It has been well said that every litigant enters upon the trial of a case, knowing not merely the uncertainty of human testimony when honestly given, but that, if he has an unscrupulous antagonist, he may have to encounter frauds of this character, and that he must take the chance of establishing his case by opposing testimony, and subjecting his opponent's witnesses to the scrutiny of a searching cross-examination. Hence the case is none the less tried on

its merits, and the judgment rendered is none the less conclusive, by reason of the false testimony produced." 15 Ruling Case Law 223.

It behooves us then to appraise the litigious process of the case at bar. The appellant-debtor made an offer of settlement to an insolvent company. The court's officer in charge of the duty of collecting the assets of that company requested reference to a fact trier, Publicker v. Shallcross, above cited. A hearing was had but at that hearing the court's officer did not treat the appellant as an adversary at all but assumed the role of an advocate for rather than against his offer, Record p. 41. We are not interested here in whether the elicitation of the truth about the "best interests" of the estate should take that form, 53 C.J. 147. The point is that he did not regard the appellant as a *possibly* "unscrupulous antagonist". So the risk of perjury is increased and should overcome the annoyance of law suits. Another and perhaps minor distinction between a receiver and a private litigant may lie in the psychological field. The private litigant is working for himself and is apt to make a greater effort to discover the perjury essential to attempts to prolong the warfare. Furthermore, the court itself here had an interest in ascertaining the truth on behalf of the creditors, bondholders, etc., committed to its guidance. Consequently, petitioner's perjury not only misled the receivers, but impinged directly upon the administration of justice.

Rather to our surprise, appellant's counsel seemed unaware of the existence of another later and conflicting decision in the Supreme Court, namely, Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L. Ed. 870. That conflict has been a source of bewilderment to the "inferior" Federal Courts ever since 1891. Three years after that one circuit judge and one Circuit Court of Appeals sought enlightenment by way of certification, Graver v. Faurot, C. C., 64 F. 241; Graver v. Faurot, 7 Cir., 76 F. 257. Their failure to receive it, Graver v. Faurot, 162 U.S. 435, 16 S.Ct. 799, 40 L.Ed. 1030, must have discouraged others of us because in 1935, we find a district court saying:

"It may seem that this case is in conflict with the case of United States v. Throckmorton, 98 U.S. 61, 65, 25 L.Ed. 93, where the rule is more restricted.

"An attempt was made by the Circuit Court of Appeals of the Seventh Circuit in the case of Graver v. Faurot, 162 U.S. 435, 16 S.Ct. 799, 40 L.Ed. 1030, to get the Supreme Court of the United States to settle any conflict, but the court refused, and thus each of these cases stands as an authority for the choice of the District Court. The decisions of the various federal circuit and District Courts reveal that one or the other of these cases has been followed."

American Bakeries Co. v. Vining, D.C., 13 F.Supp. 323, 325.

A writer in the Columbia Law Review expresses a slightly cynical view of this difference of opinion among the great and learned. He says:

"The general confusion of the law on this point is due to the fact that two fundamental principles come into conflict. On the one hand, the rule that fraud vitiates all things, and that equity will prevent the enjoyment of any advantage so obtained, would give equity jurisdiction in every case in which fraud could be proved. On the other, the doctrine of res adjudicata, and the principle contained in the maxim 'interest rei publicæ ut sit finis litium' would prevent equity from setting aside a judgment for any reason. As might be expected, the courts' effort to reconcile the two has led to a series of cases which are clear enough at either extreme, but blend in the center into a hazy region of uncertainty.
\* \* \*

"But where the fraud complained of consists of false evidence in the form either of perjured testimony or of forged documents, there is an irreconcilable conflict. The rule is not abrogated; but some courts say that perjury is collateral fraud, and therefore a ground for interference; and others that it is inherent fraud, and therefore not such a ground. \* \* \* The Supreme Court of the United States, to show its utter impartiality, has ruled both ways, and left the spectacle of two cases, one of which holds that false evidence is a ground for reversal, the other that it is not, both of which have been followed, and neither of which has ever been overruled. In fact, when a Circuit Court, somewhat puzzled as to which of the two authorities it would follow, asked for enlightenment, the Supreme Court refused to commit itself by answering.
\* \* \*

"As for the federal rule itself, it must still remain unsettled. Since the courts

952

are at liberty to cite either line of authorities, and do so as suits their convenience, the only possible answer in spite of repeated assertions that the federal rule is clear, is that there is no federal rule at all. And there will be none until one or the other of the conflicting decisions is overruled."

21 Columbia Law Review 268, 269, 270 (note)

In our judgment, and if the case arises, the harsh rule of United States v. Throckmorton, above cited, will be modified in accordance with the more salutary doctrine of Marshall v. Holmes, above cited. We believe truth is more important than the trouble it takes to get it.

The decree of the District Court is affirmed.