In re G & M ENTERPRISES, INC., Debtor.

David A. Eisenberg, Trustee of the Estate of G & M Enterprises, Inc., Plaintiff

v.

C & J Services, Inc., Defendant.

Bankruptcy No. 10–21932REF. Adversary No. 10–2154REF.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 9, 2013.

Kevin K. Kercher, Law Office of Kevin K. Kercher, Esq, PC, Whitehall, PA, for Plaintiff.

Cary B. Hall, Law Offices of Cary B. Hall, LLC, Karl D. Cooper, Cooper Law Office, Souderton, PA, for Defendant.

### *MEMORANDUM OPINION*

RICHARD E. FEHLING, Bankruptcy Judge.

### I. *INTRODUCTION*

In this adversary proceeding, Debtor asks that I excuse its insouciance about defending itself. I entered default judgment against Defendant on August 8, 2011, and Defendant now asks that I vacate that judgment. I will not do so. Both Defendant and its counsel were entirely aware of everything that happened in this litigation, but were somnolent in their failure to respond to Trustee's efforts to advance this case. When Defendant and its counsel finally decided to seek my reconsideration of the default, their approach was insufficient.

At the hearing on Defendant's motion for reconsideration, Defendant offered an affidavit of an office manager rather than presenting live testimony of a principal. I did not permit the affidavit to be admitted into evidence. Solely because I rejected the offered affidavit, Defendant requested that I continue the hearing. Upon my further consideration, I will admit the affidavit into evidence and I will therefore

deny Defendant's motion for a continuance as moot. I will deny Defendant's motion for reconsideration on the merits, taking the affidavit fully into account. This Memorandum Opinion contains my findings of fact and conclusions of law and supports my Order of even date herewith. Through my Order, I deny the request for a continuance as moot and deny the motion for reconsideration on the merits.

## II. BACKGROUND

### A. PREHEARING PROCEDURAL HISTORY

■ The procedural history of this adversary proceeding, particularly the issuance of numerous formal notices of pleadings and orders, is instructive. Plaintiff/Trustee filed his complaint initiating this matter on December 1, 2010. Trustee sought the recovery of certain sums that were alleged by Debtor to be owed to the estate by Defendant. On December 3, 2010, Trustee served the summons and complaint on Defendant, via first-class mail, addressed specifically to the attention of Gale Humlhanz, an acknowledged principal and agent of Defendant.[1] Defendant never answered the complaint.[2] On January 5, 2011, three days after the date by which Defendant was obliged to answer the complaint, Karl D. Cooper, Esquire, entered his appearance on behalf of Defendant. Through my

Order dated January 19, 2011, I ordered Trustee to proceed with an appropriate motion for default pursuant to Bankruptcy Rule 7055 or face dismissal of the case for lack of prosecution. On January 31, 2011, Trustee filed his request for entry of default by the Clerk. Trustee served Defendant by first-class mail and Mr. Cooper was served by email through the Court's Notice of Electronic Filing.[3] Trustee also served the request by mail on Mr. Cooper. The Clerk entered default against Defendant on February 9, 2011. The Clerk's entry of default was served on both Defendant and Mr. Cooper.

By my Order dated February 10, 2011, I denied Trustee's request that I enter default judgment against Defendant because the relief should have been requested through a motion for default judgment. My February 10, 2011 Order was served on Defendant and Mr. Cooper on February 12, 2011. On February 16, 2011, Trustee filed his renewed motion for default judgment against Defendant. Trustee again served both Defendant and Mr. Cooper. On March 2, 2011, Mr. Cooper filed Defendant's response to Trustee's motion for default judgment. A hearing on Trustee's motion for default judgment was scheduled on March 24, 2011, but was continued first to April 7, 2011, and then to April 26, 2011. On April 25, 2011, Trustee

---

1. Service by first-class mail addressed to Ms. Humlhanz constituted proper service pursuant to Fed. Rule Bkrtcy Proc. 7004(b)(3). In Paragraph 3 of Defendant's Affidavit of Marie Snyder (the "Snyder Affidavit"), filed on November 6, 2012, Ms. Snyder identified herself as the office manager of Defendant. Ms. Snyder also acknowledged that Ms. Humlhanz "ran" Defendant and was a principal and employee of Defendant. Snyder Affidavit, ¶ 4.a.

2. Defendant's refusal to answer the complaint continues to this day. Often, in requests for

reconsideration of a default, a diligent party will attach its proposed answer to its motion, thereby showing both its good faith and its meritorious defense. Defendant has elected not to do so.

3. Service of the motion on Defendant by first-class mail and via the Court's electronic service system constituted proper service pursuant to Fed. Rules Bkrtcy Proc. 9014(b) and 7004(b)(3). Trustee mailed and served all future motions on Defendant in the same, correct manner.

and Defendant filed a stipulation[4] through which Trustee would withdraw his motion for default judgment if Defendant filed its answer to the complaint within 20 days. Defendant also agreed in the stipulation to provide certain discovery to Trustee. Defendant claimed that it had difficulty gathering the necessary documents to prepare an appropriate response. I approved the stipulation through my Order dated April 28, 2011, which was served on Defendant and Mr. Cooper on April 30, 2012.

When nothing had been filed on the docket more than two months later, I entered another Order, dated July 7, 2011, requiring Trustee to file an appropriate motion pursuant to Bankruptcy Rule 7055 or face dismissal for lack of prosecution. On July 14, 2011, Trustee filed a renewed motion for default judgment against Defendant and served Defendant and its counsel with the renewed motion. On August 1, 2011, Trustee certified that no response to his renewed motion had been filed. I entered judgment against Defendant in the amount of $84,542.63 through my Order dated August 8, 2011.[5] Once again, notice of the Order entering judgment was served on both Defendant and its counsel on August 10, 2011. On August 24, 2011, the Clerk's Office closed this adversary proceeding.

Nine months later, on May 9, 2012, Trustee moved to reopen the case because his efforts to collect on the judgment against Defendant had been unsuccessful. Defendant had refused to comply with his requests for discovery relating to its assets. Trustee based his request to reopen on the need to accord relief to the Debtor/Trustee and for other cause under Section 350 of the Bankruptcy Code, 11 U.S.C. § 350. Trustee was attempting to obtain assets that he could distribute to creditors and that would assist him in his administration of Debtor's estate. Again, Trustee served both Defendant and Mr. Cooper with the motion to reopen. Trustee certified no response to the motion to reopen on May 24, 2012, and I reopened this case through my Order dated May 29, 2012.

On May 29, 2012, Trustee filed his motion to compel the deposition of Ms. Humlhanz, which he served on both Defendant and Mr. Cooper. On June 13, 2012, Trustee certified no response and I entered an Order, dated June 18, 2012, compelling the deposition of Ms. Humlhanz. Cary B. Hall, Esquire, Defendant's new counsel,[6] had not yet entered his appearance in this case. On June 20, 2012, therefore, notice was served solely on Defendant and Mr. Cooper.

In October 2012, Defendant and its counsel finally ceased ignoring Trustee's proceedings in this Court. On October 19, 2012, almost two years after this litigation started, over fourteen months after the default judgment had been entered, seven months after Defendant's bank account had been garnished,[7] and four months after I ordered Ms. Humlhanz to submit to being deposed, Mr. Hall finally entered his appearance for Defendant.[8] On that same

---

4. Mr. Cooper signed the stipulation on behalf of, and as counsel for, Defendant.

5. I had waited a few extra days before entering judgment, in a fruitless effort to allow Defendant to finally wake up and file an answer to avoid default judgment.

6. As discussed below, Mr. Hall represented Defendant at this time and had contacted Trustee's counsel the preceding March on be-

half of Defendant to discuss the default judgment.

7. See n. 14, infra.

8. The record does not reflect when Mr. Hall was formally retained by Defendant, but Trustee's counsel remarked (without contradiction) that Mr. Hall had contacted him about the judgment against Defendant in March or April 2012. See the oral recording

date, Mr. Hall filed Defendant's motion to reconsider the judgment entered against Defendant on August 8, 2011, fourteen months previously. Mr. Hall self-scheduled an evidentiary hearing for the motion on November 6, 2012. Trustee filed his answer to the motion for reconsideration on October 23, 2012. On November 6, 2012, counsel for Trustee and counsel for Defendant appeared in Court for the evidentiary hearing scheduled by Mr. Hall on Defendant's motion for reconsideration.

## B. ADMISSIBILITY OF THE SNYDER AFFIDAVIT AND DEFENDANT'S MOTION FOR CONTINUANCE OF THE NOVEMBER 6, 2012 HEARING

On November 6, 2012, immediately before the hearing, Defendant hand filed[9] the Snyder Affidavit on the docket in the Clerk's Office. Mr. Hall offered the Snyder Affidavit as his sole evidence at the hearing with no prior notice to either opposing counsel or the Court. Because the affidavit constituted hearsay (as Mr. Hall acknowledged), I declined to admit it into evidence at the hearing. Mr. Hall did not bring any witness to the hearing because, he claimed, Defendant's principal was out of town.[10] He claimed that he had not anticipated that an evidentiary hearing

would be necessary. Although he had self-scheduled the date of the evidentiary hearing, Mr. Hall failed to suggest to either opposing counsel or the Court that he might or would need a continuance of the hearing based upon the unavailability of his witness(es). Mr. Hall announced at the hearing that he was not familiar with bankruptcy practices and procedures generally[11] and that he had made incorrect assumptions about the appropriate procedures.

█ I did not admit the Snyder Affidavit into evidence at the hearing and Mr. Hall did not contest that decision. Defendant now argues in its brief that many courts allow affidavits to be admitted as substantive evidence. That argument is indisputable. Defendant refers me to rules and decisions in which courts have decided that they *may* use affidavits in lieu of a live witness. For example, Federal Rule of Civil Procedure 43(c) states:

> **Evidence on a Motion.** When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions.

I understand quite well that I *may* consider affidavits for issues outside the pleadings to determine a motion. In my Prac-

---

of the hearing at 10:02:00 a.m. to 10:02:45 a.m.

9. Effective January 5, 2005 all attorneys were required to become electronic "Filing Users" within the CM/ECF system. Attorneys who were not able to file electronically by that date, or who were thereafter unable to do so, may apply for an extension of time. New attorneys may (should) register when and as they file documents in this Court. Standing Order No. Misc. 03–3005, amended by Standing Orders No. Misc. 03–3011, No. Misc. 04–3009, and No. Misc. 04–3011. *See also* User's Manual for Electronic Case Filing, ¶¶ 1(A) & (B).

10. Mr. Hall gave no excuse for his failure to bring Ms. Snyder (the affiant in the proposed affidavit).

11. Mr. Hall was also not familiar with my published practices and procedures. Paragraph B.7.a. (Litigation Generally—Presentation of Evidence) of my Judicial Practices and Procedures instructs on the use of affidavits: "Judge Fehling permits the use of Rule 43(e) affidavits in lieu of testimony if the parties consent to their use." The reference to Rule 43(e) is obsolete, having arisen from a prior version of Rule 43, which was revised to the current Rule 43(c). The framework for his proper presentation of affidavits is set forth nonetheless.

tices and Procedures, I expressly address the use and admission of affidavits into evidence.[12] But the November 6, 2012 hearing was unquestionably scheduled by Defendant's counsel himself as an evidentiary hearing. Neither the Court nor the Trustee had prior notice of his intended reliance on a literally last minute affidavit to establish Defendant's entire factual basis for reconsideration. Neither the Court nor the Trustee had notice that his witness(es) would not be present. Both Trustee's counsel and I therefore anticipated a hearing with live witnesses and presentation of appropriate evidence.

My rejection of Defendant's proffered Snyder Affidavit was entirely correct. *See In re Olick,* 311 Fed.Appx. 529 (3d Cir. 2008). The Third Circuit Court in *Olick* reviewed the bankruptcy court's rejection of an affidavit at a reconsideration hearing because the affiant was not available for cross-examination. The Court decided that the rejection was authorized by Federal Rule of Civil Procedure 43, which is made applicable to bankruptcy courts by Federal Rule of Bankruptcy Procedure 9017. *Id.* at 532 n. 5. Pursuant to *Olick,* therefore, my continued rejection of the Snyder Affidavit would be correct.

In the first case cited by Defendant, *Iannella v. Sullivan,* Civ. A. No. 93–CV–0620, 1995 WL 273608, at *2 (E.D.Pa. May 5, 1995), the District Court rejected the use of an affidavit as unreliable and unpersuasive for a variety of reasons. Defendant also incorrectly cites a Third Circuit Court decision that purportedly "recognized and blessed" the use of affidavits.

*Skehan v. Board of Trustees,* 669 F.2d 142, 154–55 (3d Cir.1982). The *Skehan* court specifically recognized the issue, however, to be whether the proceeding before the lower court had actually been a "hearing." If it were a hearing, affidavits would be inappropriate. The Circuit Court concluded, "[T]he [trial] court did not make a conclusive determination that a hearing would take place." *Id.* at 154. Affidavits, therefore, might or might not be appropriate. In the dispute now before me, no such uncertainty exists. Defendant's counsel himself scheduled the November 6, 2012 matter as an evidentiary hearing and not as argument. Upon Defendant's further pressing my consideration of the Snyder Affidavit, however, I have decided to admit it into evidence.

Despite my decision to admit the Snyder Affidavit into evidence, I note that certain specific allegations in the Snyder Affidavit are troubling. Many paragraphs contain double hearsay, other statements are inadmissible for other reasons, and others are wholly belied by the official docket in this case. Paragraph 1 of the Snyder Affidavit explains Ms. Snyder's duties for Defendant, including her receiving mail for Defendant. Paragraphs 2–18 attempt to convey a meritorious defense to the complaint. Defendant correctly understands the importance of establishing a valid defense to open a default judgment. See *Frost v. Subramanian (In re Subramanian* ), 245 Fed.Appx. 111, 115 (3d Cir.2007)(the threshold question is whether the defendant has stated a meritorious defense).[13]

12. *See* n. 11, *supra.*

13. *Subramanian* is designated "not for publication." *See* Federal Rule of Appellate Procedure 32.1. The Third Circuit Court's Internal Operating Procedures ("IOP") note that the court, by tradition, does not cite to its nonprecedential opinions because they are not decided by the full court. The IOP discourages lower court judges from relying on unpublished opinions, but does not prohibit it. Because Defendant advanced *Subramanian,* I will consider it. I note, furthermore, that Defendant misstated critical aspects of *Subramanian,* which I will address below.

Paragraphs 19–21 of the Snyder Affidavit explain Mr. Cooper's involvement in the litigation on behalf of and as counsel for Defendant, including his failure to advise Defendant about what was happening in this adversary proceeding. Paragraph 22 is missing. In Paragraph 23, Ms. Snyder avers that she became aware of the default judgment in spring 2012 when one of Defendant's bank accounts was frozen.[14] In Paragraph 24, Ms. Snyder says she does not recall receiving any notice of the default judgment and that she would have remembered any such notice given her personal involvement in this case.

■ As noted above, the Snyder Affidavit suffers from double hearsay and other infirmities and much of it must be rejected. In Paragraph 7, Ms. Snyder could not know that a principal of Debtor recognized that the proposed joint effort would be a "learning experience" unless he or she told Ms. Snyder—which would be hearsay.[15] In Paragraph 8, Ms. Snyder refers to certain verbal agreements (from the context, Ms. Snyder meant to refer to "oral" rather than "verbal" agreements) between the parties, which agreements constitute hearsay. Any such attempt to modify a written contract orally would also fall short of admissibility as parol evidence. In Paragraph 12, Ms. Snyder refers to errors in a spreadsheet prepared by someone who was unaware of some oral agreement between the parties. The information in Paragraph 12 was allegedly told to Ms.

Snyder by Debtor's principal, Mr. Michael Humlhanz, who is now deceased. Mr. Humlhanz statements constitute hearsay.[16] The importance of the inadmissibility of the statements by Debtor's principal in the Snyder Affidavit cannot be minimized. Defendant's defense to Trustee's action is based solely on these alleged statements between the principals of Defendant and Debtor. The Pennsylvania ·Dead Man's Act[17] excludes from my consideration the statements of Mr. Humlhanz, Debtor's deceased principal. *See Keegan v. Fahnestock & Co., Inc.*, No. Civ. A. 95–5998, 1996 WL 530000, at *4–8 (E.D.Pa. Sept. 16, 1996)(Pennsylvania Dead Man's Act renders Debtor's principal statements to Defendant's principal incompetent).

In Paragraphs 20 and 21, Ms. Snyder relays statements purportedly said to her by Mr. Cooper. This is not objectionable hearsay, however, because Defendant is not offering Mr. Cooper's statements for the truth of the matters stated. To the contrary, Mr. Cooper's statements are wholly incorrect, but they are offered as justification for Defendant's failure to file its answer, thereby leading to the default.

I disregard Ms. Snyder's statements that are based on hearsay and not on facts within her own knowledge. I also disregard other statements that have evidentiary impediments to their admissibility. *Iannella*, 1995 WL 273608, C & J at *2.

14. References at the hearing to the timing of this event placed it in March 2012. *See* oral recording of the hearing at 9:59:45 a.m. Trustee's counsel stated without contradiction that a writ from the Bucks County Court of Common Pleas froze the bank account in early to mid-March 2012.

15. This statement might be an admissible exception to hearsay pursuant to Federal Rule of Evidence 804(b)(3), although I am uncertain if this rather mild statement of Ms. Snyder truly constitutes a statement contrary to

Debtor's proprietary or pecuniary interests when made. In any event, as noted immediately below, Defendant faces an issue with admissibility under the Pennsylvania's Dead Man's Act.

16. This statement might also be excepted from hearsay. *See* n. 15, *supra.*

17. Fed. Rule of Evid. 601; 42 Pa.C.S.A. § 5930.

■ Unless Ms. Snyder is making false statements in her affidavit,[18] she is saying that Defendant's mail receipt protocol utterly broke down for well over a year.[19] As noted above and as shown on the docket in this case,[20] every notice, pleading, motion, and order was mailed to Defendant. Some were mailed to Mr. Cooper, but every notice, pleading, motion, and order was mailed to Defendant. At least eight notices about possible or actual defaults against Defendant were mailed to Defendant as well as being served on counsel.[21] The notices were addressed to Ms. Humlhanz, but Ms. Snyder made no distinction between mail identifying a particular recipient and mail that was addressed to the company generally. Whether Ms. Humlhanz or Ms. Snyder received the mailed notices of the default judgments, they were mailed to Defendant's uncontra-dicted address and constitute good and proper service. Defendant, even disregarding the notices and mailings to Mr. Cooper, had notice of all aspects of this litigation,[22] including the entry of the default judgment as well as Trustee's efforts to enforce it.[23]

When I ruled on the inadmissibility of the Snyder Affidavit, Defendant immediately sought more time by orally asking for a continuance. Trustee opposed the request[24] and I was disinclined to grant it. Defendant inveighed upon me to allow him to provide a brief supporting his position, which I did. Defendant timely filed his brief on November 16, 2012.

Pending before me at this time are Defendant's request for a continuance[25] and motion for reconsideration. First, Defen-

---

18. Because Ms. Snyder was not present in Court when her affidavit was offered, Trustee's counsel had no opportunity to examine her credibility or actual knowledge of the statements in her affidavit and Defendant's counsel had no opportunity to show that she might be a reliable witness.

19. Neither Defendant nor its counsel nor Ms. Snyder claims that the address that both Trustee and the Bankruptcy Noticing Center used was incorrect for serving notices on Defendant.

20. I may take judicial notice of the docket entries in this case under Fed.R.Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr.P. 9017). *See Maritime Elec. Co., Inc. v. United Jersey Bank.* 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *Levine v. Egidi,* No. 93C188, 1993 WL 69146, at *2 (N.D.Ill. March 8, 1993); *In re Paolino,* No. 85–00759F, 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa. Jan. 11, 1991); *see generally Nantucket Investors II v. California Federal Bank (In re Indian Palms Assoc. Ltd.),* 61 F.3d 197 (3d Cir.1995).

21. *See* Docket entries 8, 9, 10, 11, 14, 22, 24, and 25, which constitute notice that the Trus-tee is seeking default judgment or has obtained it.

22. Presumably, notices would also have gone to Defendant directly (in addition to or rather than Mr. Cooper) from Trustee's Bucks County Court of Common Pleas collection procedures.

23. Below, I will parse the portions of the Snyder Affidavit that survive any objection in addition to being primarily hearsay statements by Ms. Snyder. Those remaining portions constitute Defendant's statement of the defense it would offer in response to Trustee's complaint.

24. In the nearly seven years that I have been on the bench, this is the first time that Trustee's counsel has opposed another party's request for a continuance. He offered the following reasons for opposing the request: (1) His recurring difficulties in getting any response from Defendant to his requests for information; (2) the absence of all cooperation whatsoever from Defendant's counsel; and (3) no prior notice.

25. Obviously, I am treating Defendant's request for a continuance as a motion, but

dant's counsel made the oral request for a continuance during the November 6 hearing, to allow him to present live witnesses and other evidence in light of my refusal to admit the Snyder Affidavit. Second, Defendant's motion for reconsideration is at hand. At the November 6, 2012 hearing, counsel for Defendant expressly limited the basis for reconsideration to Federal Rule of Civil Procedure 60(b)(6).[26] This Memorandum Opinion constitutes my findings of fact, conclusions of law, and discussion supporting my accompanying Order, through which I deny the request for a continuance as moot and deny the motion for reconsideration on the merits.

### III. DISCUSSION

Defendant languished until October 2012 when it filed its motion for reconsideration of the default judgment at long last. Prior to seeking reconsideration of the judgment: (1) Defendant itself and its counsel[27] had notices of the default judgment entered in this adversary proceeding for well over a year; (2) Defendant itself and its counsel had notice of Trustee's efforts to collect on the judgment in state court by garnishing Defendants' bank account for at least seven months; and (3) Defendant itself and its counsel had notice of Trustee's discovery efforts[28] to collect on the default judgment for at least five months. Defendant and both of its counsel slept on Defendant's rights.

### A. DEFENDANT'S REQUEST FOR A CONTINUANCE

■ Defendant starts its argument by reminding me that I have the discretion to

manage my courtroom and docket as I choose. Of course I do. Defendant goes on to warn me that my discretion is not unfettered. Of course it isn't. Defendant refers me to *Setchko v. Twp. of Lower Southampton*, No. CIV. A. 00–CV–3659, 2001 WL 1132218 (E.D.Pa. Sept. 12, 2001) and *Clark v. Lutcher*, 77 F.R.D. 415 (M.D.Pa.1977). *Setchko* and *Clark* describe three factors that a court should consider when deciding whether to grant a party's request for a continuance: (1) Saving time and effort of the Court, counsel, and the litigants; (2) hardship on either party; and (3) expedition of the case on the court's calendar. The courts in both *Setchko* and *Clark* considered these three factors and denied the requests for continuances.

■ In *Setchko*, plaintiff had been deported from the country and could not participate in his litigation. Counsel asked to withdraw and for a continuance. After considering the three factors, the court denied both requests. In *Clark*, imminent civil litigation included factual and legal issues that were at the heart of, and might have prejudiced, related criminal proceedings of plaintiffs. Again, after considering the three factors, the court denied plaintiff's request to continue the civil trial. These two cases, advanced by Defendant, establish that even in extraordinary cases in which the reason for the requested continuance was not entirely a party's doing, a court's decision not to continue a proceeding is proper and entirely within the court's purview. Nevertheless, Defendant

counsel did not phrase it as such at the November 6 hearing. He simply requested a continuance.

**26.** Federal Rule 60 is expressly made applicable to proceedings in bankruptcy pursuant to Bankruptcy Rule 9024.

**27.** Mr. Cooper first became involved in this dispute when he communicated with Trustee on behalf of Defendant in March 2012.

**28.** Trustee reopened the case and sought an order requiring Ms. Humlhanz' to appear for a discovery deposition.

advances *Setchko* and *Clark* as establishing the three factors that I will weigh.

My cursory review of the three factors shows me that, if I were to exercise discretion here, I should do it in favor of denying the continuance. At this point in the case, no time will be lost to any party by my denial of the continuance. I appreciate counsel's warning me that if I deny its motion, Defendant will appeal the decision. He proceeds to caution me that if Defendant wins its appeal and the matter is back before me, the Court and the parties will have wasted time. I have less faith in the success of his appeal of this decision than counsel.

The second factor is equally baseless. No party will improperly or unnecessarily suffer any hardship from a continuance. The delays following numerous notices and Defendant's decisions not to act must fall at Defendant's feet. True, some of the inaction might fall at its counsel's feet,[29] but it is Defendant's lack of action that controls my decision in this case.

Finally, granting the continuance would not expedite any aspect of this litigation on my calendar. My initial denial of Defendant's oral request for a continuance was correct.

As I mentioned above, however, the three factors do not come into play because I have decided to consider the merits of the Snyder Affidavit. My decision makes Defendant's request for a continuance moot. The sole reason that Defendant asked for the continuance was my rejection of his proffered affidavit. Upon my decision to admit the Snyder Affidavit and to consider it on the merits, Defendant's request for a continuance is moot and I will deny it as unnecessary.

I will now consider the merits of Defendant's motion for reconsideration.

## B. FACTORS CONTROLLING DEFENDANT'S MOTION FOR RECONSIDERATION

### 1. Factors for reconsideration under Rule 60(b)

■ Three factors that I should consider in the present litigation are described in *Subramanian*, which has been suggested to me by Defendant in its brief:

> A court ruling on a motion to set aside a default judgment under Rule 60(b)(1), "must consider the following three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct."

245 Fed.Appx. at 115 (quoting, in part, *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir.1985)).[30] Defendant

---

**29.** Mr. Cooper appears to have been responsible for, or at least aware of, the seven-month delay from August 2011 (entry of judgment) to March 2012 (bank account frozen). And Mr. Hall appears to have been responsible for, or at least aware of, the seven-month delay from March 2012 (Defendant knew about the judgment and the bank freeze) to October 2012 (Defendant finally filed for reconsideration).

**30.** The *Subramanian* decision listed these three factors for a court's analysis of Rule 60(b)(1). They apply also, as Defendant advocates, to Rule 60(b) generally. *See, e.g., Johnson v. Berke Young International, LLC*, No.

07–2240, 2009 WL 997081, at *1 (E.D.Pa. April 13, 2009)(applied *Subramanian* to a Rule 60(b) motion). The *Johnson* court noted that "the Third Circuit does not favor defaults and instructs that all 'doubts should be resolved in favor of setting aside the default and reaching a decision on the merits.'" *Id.* at *1, quoting, *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 122 (3d Cir.1983). Finding all three of the *Subramanian* factors, the *Johnson* court granted the motion for reconsideration. *Id.* at *3. As is discussed throughout this Opinion, however, Defendant has failed to establish each of the three factors.

fails to establish any one of the three (conjunctive) factors, which leads me to deny reconsideration. Furthermore, Defendant misstates the holding of the *Subramanian* Court. At page 3 of its brief, in Section II.A., Defendant states, without giving a specific page reference: "The Third Circuit has already held [in *Subramanian*] that a judgment against a party occasioned by the gross misconduct of its counsel is a[sic] extraordinary matter warranting relief under Rule 60(b)(6)." The Court in *Subramanian* actually said that the test was finding *both* (1) the gross negligence of counsel *and* (2) the absence of neglect by the party. *Subramanian,* 245 Fed.Appx. at 117.[31] The Circuit Court went on to declare that debtors had failed to prove that their counsel was grossly negligent. Furthermore, the Court noted that the debtors were fully aware of the default because they had been given copies of the default motions, which were mailed to them. *Id.* The Court found no evidence that the debtors made inquiries to their counsel or the court following receipt of the notices. *Id.*

I will address the three *Subramanian* factors.

### a. *Prejudice to plaintiff*

■ First, Trustee has expended time, effort, and money over the nearly two years from January 2011, when Defendant failed to answer the complaint, through today. Trustee has been prejudiced solely by Defendant's delay. Any further delay would unnecessarily exacerbate Trustee's frustration.

### b. *Meritorious defense*

Second, the evidence of Defendant's alleged defense to Trustee's suit against it must fall based both upon the double hearsay nature of what Debtor's principal is alleged to have said and upon the incompetence of his statements under the Pennsylvania Dead Man's Act. The material facts that survive my review of the objectionable contents of the Snyder Affidavit follow:

In 2009, Defendant and Debtor entered into some arrangement through which they submitted a bid for certain construction together.[32] They were awarded the construction bid.[33] Debtor prepared a spreadsheet for the project that showed that Defendant owed payment for certain charges—labor, equipment rental, and other expenses at normal business rates.[34] Debtor withdrew its labor and resources from the project, leaving Defendant to complete the project at its own expense, incurring a significant economic loss.[35] Debtor prepared invoices to Defendant for project expenses owed by Defendant.[36] Mr. Cooper told Ms. Snyder that he could resolve the adversary proceeding through set-offs or counterclaims against Debtor (Trustee).[37] In late spring or early summer 2011, Mr. Cooper told Ms. Snyder that the adversary proceeding had been

---

31. On this issue, the *Subramanian* Court relied on and cited another decision advanced by Defendant: *Boughner v. Secretary of Health, Education, & Welfare,* 572 F.2d 976, 978–79 (3d Cir.1978).

32. Snyder Affidavit, ¶ 6. I cannot tell from Ms. Snyder's brief description of the arrangement whether she (a non-lawyer office manager) is competent to decide that the parties' arrangement was legally a joint venture, a partnership, a sub-contract, or some other legal relationship. Some writing must have existed to establish the relationship.

33. Snyder Affidavit, ¶ 9.

34. Snyder Affidavit, ¶ 11.

35. Snyder Affidavit, ¶ 14.

36. Snyder Affidavit, ¶ 15.

37. Snyder Affidavit, ¶ 20.

dismissed, the case was closed, and Defendant no longer had anything to worry about concerning the case.[38]

■ Without more information (arising from admissible evidence) of its defense, Defendant falls short of establishing a meritorious defense. To meet the *Subramanian* test, Defendant is obliged to fulfill "a more stringent standard" and to "set forth with some specificity the grounds for [its] defense." *Subramanian*, 245 Fed. Appx. at 115. *Accord, JPMorgan Chase Bank, N.A. v. Pandolfelli (In re Pandofelli)*, Bkrtcy. No. 09–18941(DHS), Adv. No. 09–2068(DHS), 2011 WL 2708831, at *3 (Bankr.D.N.J. July 11, 2011). Defendant failed to establish the second factor—a meaningful defense to the allegations in Trustee's complaint.

### c. Default was the result of Defendant's culpable conduct

Third, the assurances from Mr. Cooper to Defendant about resolving this litigation were made in late spring or early summer 2011, months before the entry of the default judgment in August 2011. Yet Defendant relies on these assurances in its attempt to justify the long delay in trying to undo the default judgment. After late spring or early summer 2011, Defendant received numerous notices of the pending and actual entry of the August 2011 default judgment from both Trustee and this Court. These notices from both Trustee and the Court negate any reasonable, rational reliance by Defendant on Mr. Cooper's prior assurances.

Assuming for argument that Defendant might have satisfied the first two factors (it did not), it failed completely to satisfy the third. The default was solely the result of the unexcused, culpable conduct of Defendant, manifested by its long-standing failure to act. The docket in this case shows multiple formal notices sent directly to Defendant relating to every event in this litigation. For the sake of further argument, however, I will assume it is also the fault of Mr. Cooper that Defendant failed to oppose the entry of the judgment in August 2011. Also for the sake of further argument, I will further assume it is the fault of Mr. Cooper that Defendant failed to do anything in this court for the seven months from the entry of judgment in August 2011 until Defendant unquestionably learned about the judgment when Trustee froze its bank account in March 2012. Finally, I will assume for the sake of argument that Mr. Cooper's inattention constitutes gross neglect of his duties owed to Defendant.[39]

When Defendant unquestionably knew about the default judgment (its bank accounts had been garnished), Defendant made no request for reconsideration for seven months. This single aspect of the delay dominated my colloquy with Defendant's counsel at the November 6 hearing. Defendant maintains that it did not receive the notices from either the Court or Trustee, hanging its failure to act on Mr. Cooper. Throughout 2011 and into early 2012, Defendant received numerous notices from the Trustee and this Court that, first, the litigation was proceeding and, second, judgment had been entered. But no no-

---

38. Snyder Affidavit, ¶ 21.

39. If Defendant's loss is truly through the gross negligence, misrepresentation, and (therefore) malpractice of Mr. Cooper, Defendant has an alternative party through whom Defendant could avoid both an incorrect denial of its claim (if any) and an wrongful obligation to pay Trustee pursuant to the default judgment. Similarly, the delay from March 2012 through October 2012 may also have resulted from Mr. Hall's actions, inactions, or advice to Defendant.

tice was more direct and obvious than the frozen bank account suffered at the hand of the Trustee's garnishment to collect on the judgment. Defendant's counsel could offer nothing excusing Defendant's failure to act for seven months after the garnishment. From the date of the garnishment, the long delay and refusal to act are solely attributable to Defendant's culpable conduct.

Defendant has not met its burden to qualify for reconsideration under the three-factor *Subramanian* test offered by Defendant as controlling. I will further expand upon *Subramanian* and other cases that review additional requirements for reconsideration.

### d. Other requirements for reconsideration under Rule 60(b)(6)

First, relief under Rule 60(b)(6) is only available when the other subsections of Rule 60(b) do not apply. *Subramanian*, 245 Fed.Appx. at 117. To get relief under Rule 60(b)(6), a party must show that it will experience extreme and unexpected hardship if the judgment stands. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir.2008). Extraordinary circumstances rarely exist when the party seeks relief from a judgment that resulted from the party's deliberate choices. *Id.* Defendant contends, in total opposition to every one of the numerous notices mailed by Trustee and this Court, that it did not get notices about the default judgment. Defendant admits, however, that it knew about the judgment in March 2012 and waited seven months to move for reconsideration. The delay in seeking reconsideration of the default judgment after March 2012 resulted solely from Defendant's deliberate choice to do nothing.

Second, Rule 60(b)(6) is only available when the other Rule 60(b) subsections do not apply. Those other subsections have an express one-year period of limitations. The Third Circuit has long held that Rule 60(b)(6) cannot be used simply as a catchall to avoid the one-year limitation. *Gambocz v. Ellmyer*, 438 F.2d 915, 917 (3d Cir.1971); *Adams v. County of Erie*, No. 1:07–cv–316–SJM, 2012 WL 4483429, at *6 (W.D.Pa. Sept. 27, 2012). The sole premise on which Defendant proceeds is the negligence of its counsel. But to prevail with that argument, Defendant must also have shown that it acted diligently to redress the problem. *Adams*, 2012 WL 4483429, at *7.[40]

Defendant showed no justification whatsoever for having ignored the judgment in August 2011.[41] Ms. Snyder apparently denies receiving the formal notice of the entry of the judgment sent to Defendant.[42]

---

40. A party seeking relief pursuant to Rule 60(b)(6) "must show 'extraordinary circumstances' suggesting that the party is *faultless* in the delay." *In re Rockaway Bedding Inc.*, 454 B.R. 592, 598 (Bankr.D.N.J.2011) (citations omitted)(emphasis added). Defendant is not faultless. Defendant at least shares fault for the seven months from August 2011 to March 2012. Defendant is entirely at fault, however, for the seven months from March 2012 to October 2012. Defendant might argue that it was not solely at fault, because Mr. Hall also knew about the garnished bank account and, therefore, the judgment. Defendant has not attributed, however, any of the delay to Mr. Hall.

41. The excuse of what Mr. Cooper is alleged to have told Defendant occurred in spring or early summer 2011. Many, many notices were served on Defendant thereafter and they showed that Mr. Cooper's statements about dismissal of the case were incorrect.

42. Clearly, the address to which all notices were sent was correct. Defendant responded to the initial summons and complaint, however inadequately, shortly after service of them. All later notices from Trustee and the Court were mailed to the same address.

On the other hand, she does not deny, but acknowledges, that Defendant was wholly aware of the judgment in March 2012 but did nothing until October 2012. Defendant has made no showing of diligence. Defendant satisfied none of the three *Subramanian* elements necessary to establish a valid claim for reconsideration. I will deny Defendant's motion for reconsideration for this reason.

#### 2. *Defendant's other arguments*

At the November 6, 2012 hearing, Mr. Hall asked that equitable tolling relieve Defendant of responsibility for the time from the August 2011 entry of the default judgment to the March 2012 freezing of Defendant's bank accounts. He also raises the perceived support he finds by stating that he could file an independent action under Rule 60(d)(1), which means I should grant his request for reconsideration rather than waste the time of deciding reconsideration and then facing Defendant's new, independent action. I examine and reject both of these arguments.

##### a. *Equitable tolling*

 In our colloquy about Defendant's defense of equitable tolling, Mr. Hall was silent in the face of a critical question I posed to him: Why had Defendant chosen to wait seven months after it knew its bank account had been garnished in March 2012 to file for reconsideration in October 2012?[43] He had no response. Equitable tolling requires some modicum of diligence. The Third Circuit Court has referred to equitable tolling as an extraordinary remedy that courts apply sparingly. *Perry v. Commonwealth of Pennsylvania,* 328 Fed.Appx. 785, 787 (3d Cir.2009) (not for publication[44]). The principles of equitable tolling do not extend to garden variety claims of excusable neglect, but require deceit or some other extraordinary grounds for relief. *Id. Accord DeMatthews v. The Hartford Ins. Co.,* 402 Fed. Appx. 686, 689, n. 4 (3d Cir.2010) (not for publication). Extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices. *DeMatthews,* 402 Fed. Appx. at 689.

 As described above, Defendant ignored numerous notices from the Trustee and the Court and sat on its hands. Even when its bank account was garnished, Defendant chose to do nothing for seven months. Equitable tolling is only available when a party pursues its rights diligently, but some extraordinary circumstance stood in its way, preventing a timely filing. *Reed v. Phelps,* Civ. Act. No. 06–445–LPS, 2012 WL 4056248, at *2 (D.Del. Sept. 13, 2012). Equitable tolling is therefore not available to Defendant to excuse its dalliance and deliberate lack of attention.

##### b. *Independent action*

Defendant introduced a new tack in its brief—the "independent action" approach to reconsideration, including the inability to raise res judicata as a defense.[45] Defendant's counsel introduces the independent action provision by referring to *Schum v. Bailey,* 578 F.2d 493 (3d Cir. 1978). Defendant's reliance on *Schum* is misplaced and erroneous. First, the

---

43. *See* oral recording of hearing at 10:01:45 a.m. to 10:02:00 a.m.

44. *See* n. 13, *supra.*

45. The basis for the concept of independent action, as presented by Defendant, is Rule 60(d)(1), which provides: "**(d) Other Powers To Grant Relief.** This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; ..."

*Schum* Court specifically rejected the concept of res judicata because it had not been raised in the trial court. *Id.* at 498, n. 6. Second, the issues of independent action and res judicata were not raised in the majority decision at all, but arose solely from a lone judge concurring on other grounds. Defendant's statement that the independent action provides an additional mechanism for an aggrieved litigant to request equitable relief from a trial court may be true under certain unique circumstances. But it is certainly not the holding of and was not recognized in *Schum* (except by the concurrence).

Even the concurring jurist in *Schum* would decline to apply the concept unless a party was affirmatively misled into a damaging course of action. *Id.* at 505. The concurring judge noted that if a party were induced into taking some action by the fraudulent misrepresentation of fact by an opponent, the defrauding opponent should not and would not enjoy any advantage obtained as a result of the fraudulent wrongdoing. *Id.* at 506. The *Schum* decision does not provide any comfort or support to Defendant who has alleged no even mildly bad conduct by Trustee. Defendant's own inaction has resulted in its difficulties—not the actions of any other person, and specifically not of the Trustee.

Defendant accurately quotes the Third Circuit in its case, *Publicker v. Shallcross,* 106 F.2d 949, 952 (3d Cir.1939): "We believe truth is more important than the trouble it takes to get it." The *Publicker* court was faced with reconciling two conflicting 19th century decisions of the United States Supreme Court, *United States v. Throckmorton,* 98 U.S. 61, 25 L.Ed. 93 (1878), and *Marshall v. Holmes,* 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870 (1891). The two cases addressed assertions of fraud in

misleading a party to take a position that led to the innocent party losing the litigation. *Throckmorton* said that when a case is done, it's done. *Marshall* found an avenue of protection for a defrauded litigant by opening the judgment. In *Publicker,* the Court presaged its final decision when it described appellant as arguing that its wickedness should be rewarded.[46] The Third Circuit adopted the *Marshall* rationale, which allowed a defrauded litigant to re-enter the fray. *Publicker,* 106 F.2d at 949. Presented with sufficient proof (or, at least, allegations) of the fraud of the successful, but conniving, litigant in the underlying litigation, the Court uttered the above quote and affirmed the lower court's decision to re-open the case. Defendant has not alleged the slightest wrongdoing of Trustee. Defendant cannot avail itself of either the *Schum* or the *Publicker* decisions.

I have echoed the quoted phrase from *Publicker* over and over again over my seven years as a judge. I am uncomfortable with defaults and routinely allow cases to be re-opened, orders to be stricken, and judgments to be vacated. But each of the re-opened, stricken, or vacated events had a diligent party or counsel who more or less immediately noted the occurrence of the adverse action and moved promptly to seek to undo that action. This is not that case.

Judge Joy Conti succinctly analyzed Rule 60 and the independent action concept in *Shearer v. Buschmeier (In re G & G Investments, Inc.),* No. 10–374, 2010 WL 4929081 (W.D.Pa. Nov. 30, 2010). Rule 60, she declared, allows a separate, independent action for fraud on the party and fraud on the court. *Id.* at *8 (omitting citations). For a claim to qualify as an

---

**46.** My reading of other passages in the *Publicker* decision leads me to believe that the Court was perturbed with questionable advocacy perpetrated by appellant's counsel.

independent action under Rule 60(d), the party must show that the extraordinary relief is necessary to avoid a sufficiently gross, grave miscarriage of justice. *Id.* The claim of an independent action remains subject to laches [47] and fraud must be pled. *Id.* An independent action can only be permitted in the case of the most egregious conduct and must be supported by clear, unequivocal, and convincing evidence. *Id.* The requirements of a claim of fraud on the court [48] are (1) intentional fraud, (2) by an officer of the court, (3) directed to the court itself, and (4) which deceives the court. *Id.* Once again, Defendant did not even attempt to allege any of the elements of this relief. It falls from laches and from the absence of any fraud whatsoever by Trustee.

█ Circumstances warranting relief under Rule 60(d)(1) are more limited than under Rule 60(b)(6), which are more limited than under the other subsections of Rule 60(b). *In re Rockaway Bedding, Inc.,* 454 B.R. 592, 599 (Bankr.D.N.J.2011). Defendant has not satisfied the grounds for relief under Rule 60(b)(6). Defendant therefore has not satisfied the more extraordinary grounds required for relief under Rule 60(d)(1).

From another tack altogether, Defendant is not eligible for relief under Rule 60(d)(1) for an independent action, because it has not brought any such independent action. *Wilson v. Dows,* No. 1:08–CV–2219, 2011 WL 2895143 (M.D.Pa. July 15, 2011). Relief under Rule 60(d)(1) is therefore not available to Defendant to excuse

its months of inaction and deliberate lack of attention.

## IV. CONCLUSION

Defendant itself is more responsible than both Messrs. Cooper and Hall for its delay in seeking reconsideration of Trustee's default judgment against it. This is Defendant's liability and Defendant had crystal clear notice (the garnished bank account) in March 2012 that Trustee had default judgment entered against Defendant. Defendant waited over a year from the entry of the default judgment to move for reconsideration. That unexcused and unexplained delay, but especially the delay after March 2012 forfeited any claim Defendant might have advanced that it innocently, faultlessly, and inculpably had default judgment entered against it. Defendant therefore does not qualify for reconsideration pursuant to Rule 60(b)(6), through equitable tolling, or pursuant to Rule 60(d)(1). Based upon the above discussion, therefore, I will deny Defendant's motion for reconsideration through the accompanying Order.

## ORDER DENYING DEFENDANT'S REQUEST FOR A CONTINUANCE AND MOTION FOR RECONSIDERATION

AND NOW, this 9 day of January, 2013, upon my consideration of Defendant's oral request for a continuance at and from the November 6, 2012 hearing on Defendant's motion for reconsideration of Trustee's default judgment, and upon my consideration of the merits of the motion for reconsider-

---

**47.** *Accord, Averbach v. Rival Mfg. Co.,* 809 F.2d 1016, 1020 (3d Cir.1987)(quoting the notes of the Advisory Committee on Rules). As noted throughout this Opinion, laches presents Defendant with an insurmountable hurdle—Defendant consciously decided not to remedy the judgment for at least seven months after knowing Trustee was enforcing

the judgment in state court (March 2012) and for 14 months after the judgment was entered (August 2011), in spite of Mr. Cooper's suggestion (late Spring or early Summer 2011) that Trustee's case had been dismissed.

**48.** Judge Conti's analysis would logically apply to any claim of fraud on the parties.

ation, and upon Defendant's brief in support of its motions, and upon the colloquy with counsel at the November 6, 2012 hearing on the motion for reconsideration, and upon the findings of fact, the conclusions of law, and the discussion set forth in the Memorandum Opinion of even date,

IT IS HEREBY ORDERED that Defendant's request for a continuance of the November 6, 2012 hearing is hereby DENIED AS MOOT.[1]

IT IS FURTHER ORDERED that Defendant's motion for reconsideration of the entry of default judgment entered against it on August 8, 201, is hereby DENIED ON THE MERITS.[2]

---

1. As described more fully in the accompanying Memorandum Opinion, the sole reason for Defendant's request for a continuance was my decision at the November 6, 2012 hearing, not to admit the Snyder Affidavit into evidence. Because I am now admitting the Snyder Affidavit into evidence, Defendant's request for a continuance is moot.

2. Again, as more fully described in the accompanying Memorandum Opinion, the inordinate delay of Defendant (and, parenthetically, its counsel) in seeking to open the default judgment long after it was entered, among other discussed reasons, causes me to deny Defendant's motion for reconsideration as unworthy on its merits.